MIKE CARNEGO v. CRESCENT COAL COMPANY, Appellant.

Infants: WRONGFUL DEATH: RECOVERY OF BURIAL EXPENSES. Under the statute of this state a father and, in case of his death, imprisonment or desertion of his family, the mother can recover for expenses and actual loss of services resulting from the injury or death of a minor child; and included in the term expenses are those of suitable burial.

Same: BURIAL EXPENSE: REASONABLE VALUE: EVIDENCE. While proof of the cost of an article on the open market or at auction is some evidence of the reasonable value of the article, evidence simply that plaintiff paid a specified sum for the burial expenses of his minor child negligently killed, though admissible to show that such expense had been incurred, was insufficient to show the reasonable value of the same and to justify submission of that issue to the jury.

Mines and mining: NEGLIGENCE: INSTRUCTIONS: REFUSAL OF REQUEST. Where the court instructed that plaintiff could recover only in case the jury found that it was defendant's duty to inspect the roof of the mine where decedent was at work, and failed to perform such duty, and that if it was decedent's duty to make such inspection, or if the roof was subject to change brought about by decedent or the other workmen, and its dangerous condition thus resulted he could not recover, there was no occasion for giving a requested instruction that the burden was upon plaintiff to show

that the falling of slate from the roof which caused decedent's death was one of the dangers incident to his employment.

**Same:** INFANTS: NEGLIGENT DEATH: DAMAGES. A parent is entitled to recover for the negligent death of a minor child the present worth of his probable earnings to the time of his majority, less the probable cost of his support and maintenance for such time.

In the instant case the net earnings of a minor son for about two years and five months, including a reasonable sum for burial expenses is not shown to have exceeded $1,000.00.

*Appeal from Mahaska District Court.*—HON. JOHN F. TAL-BOTT, Judge.

TUESDAY, MARCH 24, 1914.

ACTION by a parent for the expenses and loss of services of a minor son, killed, as is alleged, by the negligent act of the defendant. From judgment against it, the defendant appeals.—*Affirmed* on condition.

*Burrell & Devitt* and *John T. Clarkson,* for appellant.

*S. V. Reynolds* and *McCoy & McCoy,* for appellee.

LADD, C. J.—The facts are sufficiently stated in *Carnego v. Crescent Coal Company,* 163 Iowa, 194, where the action was by the administrator of the estate of the deceased. In this action the father sought to recover for expenses of burial and loss of services, to which he would have been entitled had his son lived until he attained majority. Appellant first contends that there can be no recovery in such a case for funeral expenses. At the common law it was the duty of the father to inter his child upon death decently and to defray the necessary funeral expenses. *Reg. v. Vann,* 5 Cox. C. C. 379. If death occurred instantly, he could not recover from the wrongdoer causing the loss of services or for funeral expenses, *Trow v. Thomas,*

1. INFANTS: wrongful death: recovery of burial expenses.

70 Vt. 580 (41 Atl. 652), but if the child survived some time, he might recover for such loss up to the time of his demise, together with expenses for medical attendance, nursing and the like. *Louisville, New Albany & Chicago Railway Co. v. Goodykoontz,* 119 Ind. 111 (21 N. E. 472, 12 Am. St. Rep. 371) ; *Jackson v. Railway,* 140 Ind. 241 (39 N. E. 663, 49 Am. St. Rep. 192) ; *Carey v. Railway,* 1 Cush. (Mass.) 475 (48 Am. Dec. 616), and valuable note at page 622; *Southern Ry. Co. v. Covenia,* 100 Ga. 46 (29 S. E. 219, 40 L. R. A. 253, 62 Am. St. Rep. 312) ; *Augusta Factory v. Davis,* 87 Ga. 648 (13 S. E. 577; 29 Cyc. 1641).

The subject is now regulated by section 3471 of the Code, providing that: "A father, or in case of his death or imprisonment or desertion of his family, the mother, may as plaintiff maintain an action for the expenses and actual loss of service resulting from the injury or death of a minor child." In view of the previous state of the law, there can be no doubt of what was intended by this statute or the word "expenses." It has reference to the reasonable cost incurred for medical attendance, nursing and the like, including that of suitable burial. *Cleary v. City Ry. Co.,* 76 Cal. 240 (18 Pac. 269) ; 6 Thomp. Neg., section 7093. Statutes authorizing recovery for the wrongful death of a minor child, not specifying expenses, are construed in England and several of the states so as not to include the cost of burial. See *Dalton v. Ry.,* 4 C. B. (N. S.) 296. *Consolidated Traction Co. v. Hone,* 60 N. J. Law, 444 (38 Atl. 759). These decisions are not in point, and funeral expenses were rightly held recoverable.

II. The only evidence concerning the expenses of burial was that given by plaintiff's son, John Carnego: "Do you know how much the funeral expenses were in this case? A. $529.25. Q. Who paid it? A. I did. Q. Whom did you pay it for? A. I paid it for my father. Q. Who gave you the money to pay it with? A. My father." Objection was made to each

2. SAME: burial expense: reasonable value: evidence.

question and overruled. The evidence was admissible as tend-
ing to show that the expenses had been incurred and paid.
Was it sufficient to establish the reasonableness of the cost?
Had the various items making up these expenses and the
cost of each been stated, there might have been room for the
jury to infer therefrom the reasonable value thereof, and
whether they were such as properly might be chargeable
against defendant for the interment of a person in deceased's
station in life.

It seems well settled that proof of what has been paid
for an article of personal property recently in the open mar-
ket, or when sold at auction, or when it has no market value
and its change of condition is shown, is received as furnish-
ing some evidence of its actual or reasonable value.  3 Cham-
berlayne on Evidence, sections 2175-1b, 2175-1c.  Thus in *Bird
v. Everard,* 4 Misc. Rep. 104 (23 N. Y. Supp. 1008), what
plaintiff paid for an overcoat in the absence of other proof
was held sufficient to show its value and in *Small v. Pool,* 30
N. C. 47, evidence of what plaintiff gave for a slave and
what he afterwards sold her for was admitted as an aid to
the jury in assessing damages.

In *Motton v. Smith,* 27 R. I. 57 (60 Atl. 681, 8 Ann. Cas.
831), the court observed that "an owner is doubtless usually
qualified to state the cost price of articles of personal prop-
erty, and from that, with information as to age and wear,
the jury might estimate values."  In *Swanson v. Railway,*
116 Iowa, 304, the holding was that a witness might testify
"to the price paid for land as tending to show its market
value."  In *Richmond v. Railway,* 40 Iowa, 264, the cost of a
building was received in evidence, not as the measure of dam-
ages, but as a means to aid the jury in arriving at its present
value.  See *McMahon v. City of Dubuque,* 107 Iowa, 62; *Jones
v. Morgan,* 90 N. Y. 4 (43 Am. Rep. 131) ; *Sullivan v. Lear,*
23 Fla. 463 (2 South. 846, 11 Am. St. Rep. 388) ; *Thompson
v. Anderson,* 94 Iowa, 554.

Other cases might be cited illustrating the application

of the rule indicated. There is nothing here, however, to show for what the funeral expenses were incurred, or what was paid for the several articles as distinct from services rendered. If the articles were purchased on the open market, the amount paid would be some evidence of their reasonable value. But the question still remains as to the propriety of procuring that which was obtained as reasonably essential to the decent burial of deceased. See *Foley v. Brocksmit,* 119 Iowa, 457, where this court exacted a remittitur of all in excess of $150, where $455 had been allowed as funeral expenses. Moreover, it seems quite clear from the authorities that a different rule obtains in proving the value of services rendered or repairs made than in showing what articles of personalty are worth. This is on the ground that no criterion, as that of the open market, is ordinarily furnished the jury by which to estimate the value of what is done. Thus in *Hobbs v. City of Marion,* 123 Iowa, 726, it was said: ''The jury may, and, indeed, must, be left to place its own estimate upon damages for pain and suffering, for they are not measurable by the test of market values; but the value of services and the amount of damages to property are matters concerning which, under ordinary circumstances, direct and competent evidence is available, and without it they should not go to the jury.''

In *Schimpf v. Sliter,* 64 Hun, 463 (19 N. Y. Supp. 644), it was adjudged that ''to allow proof of the amount paid by plaintiff to his physician without showing the value of the services'' was error, and this ruling was confirmed by the Court of Appeals in *Gumb v. Railway,* 114 N. Y. 411 (21 N. E. 993), where it was held to be error to allow the plaintiff to testify to the amount paid for the reparation of a wagon without evidence of the value thereof and also in allowing him to testify what was a physician's charge for his services without evidence of payment or the value of the services other than the remark of the physician stating the amount of his bill and that it was small.

In *Wheeler v. Railway*, 91 Tex. 356 (43 S. W. 876), the court held that the injured party must prove what would be reasonable compensation to the physician for the services rendered and would be entitled to recover that amount if he had paid or was liable to pay the same, adding: "It was error in the trial court to submit to the jury the question of the medical bill paid by the plaintiff for services rendered to him, because there was no proof that such amount was a reasonable compensation for the services rendered." In *Massena Savings Bank v. Garside*, 151 Iowa, 168, and *Waltham Piano Co. v. Freeman*, 159 Iowa, 567, allowing the jury to take into consideration the amount paid an attorney without proving its reasonable value, was held to have been erroneous. We have held, however, that where the services rendered are of a nature likely to be familiar to the jury and the charge is not questioned, its reasonableness may be safely left for their determination. *Lampman v. Bruning*, 120 Iowa, 167; *Scurlock v. City of Boone*, 142 Iowa, 684.

In *Sachra v. Town of Manilla*, 120 Iowa, 562, the court instructed that the plaintiff should be allowed for money expended for medical treatment, and this was criticized for not stating instead that he was entitled to recover the reasonable value of the expenses incurred therefor, and the court, after directing attention to the fact that the evidence indicated that the services of one physician were worth $100, and that the bill of the other was not over $20, held that this justified the instruction, citing *Flanagan v. Railway*, 83 Iowa, 639, where the expenses were shown to be $40 or $50, and the court, after stating it was not "pretended that the expenditure of such a sum was unreasonable or unnecessary," decided that it would not be presumed that the finding of the jury exceeded such amount, and therefore no prejudice was suffered from the instruction.

In *Vedder v. Delaney*, 122 Iowa, 583, it appeared that the plaintiff after being injured was kept by the officers charged by the law with relief of the poor, and cared for

at the expense of the county, and he testified that he had promised to reimburse the county for the expenses incurred and proved the items and amount of such expenditures. In response to the contention that such evidence was not admissible, the court, after showing that he was entitled to reasonable and fair value of the expenses, observed that: "It has often been held that proof of what the plaintiff has in fact paid for such necessary services is some evidence of their reasonable value, and is sufficient to justify the submission of the question to the jury" (citing the *Lampman* and *Sachra* cases and *Colwell v. Railway,* 57 Hun, 452, 10 N. Y. Supp. 636), adding: "The fact that the expenses in this case were first assumed or paid by the county, and that thereafter plaintiff undertook or agreed to reimburse the county for the expenditures in his behalf, does not make the rule any less applicable." The point actually decided seems to have been that stated in this excerpt, and the previous suggestion as to the cost of services, not inconsistent with the *Lampman* case, to have been made in aid of this conclusion. The decisions of this state, as seen, do not sustain the thought that the amount paid for services of any nature is enough evidence to warrant submitting the issue as to the sum, for in *Sachra v. Town of Manilla* value was otherwise proven and in *Lampman v. Bruning* and *Scurlock v. City of Boone,* this was permissible only where the services and their value were likely familiar to the jury. In *Colwell v. Manhattan Ry. Co.,* 57 Hun, 452 (10 N. Y. Supp. 636), a nurse was paid $100 for nursing the plaintiff six months, and after directing attention to the rule that the price was some evidence of the value of property, the court says: "The price actually paid for personal services, such as those of this nurse, may be considered as some evidence of the value of the work performed, and constitute competent proof sufficient to warrant the jury in considering the item in the assessment of damages." This was correct as applied to the services of an unskilled nurse (*Scurlock v. City of Boone, supra*), and

if it related to skilled nurses, any value the ruling may have
had as authority, the court being intermediate, was destroyed
by the decisions of the Court of Appeals of New York here-
tofore cited, announcing a different doctrine.  Services per-
sonal or otherwise are so various and differ so much in their
nature and value that general application of the principle
pertaining to proof of value of property ought not to obtain.
It is matter of daily observation that prices paid different
persons for like services differ radically.  There is no general
criterion, such as the open market, by which to ascertain
what the rendition of a specified service is worth.  This often
depends on experience, or environment, and frequently on
opportunity.  One will exact many times as much as another
for precisely the same service, and it is not exacting too much
to require something more than mere proof of cost, save
in the more familiar employments where supply and demand
regulate somewhat as in the open market, or prices are uni-
form, in order to establish the reasonable value of services
rendered.  Moreover, if this were not so, as the services ren-
dered were not disclosed, the jury could not, in any event,
fix their value.

The general statement of the cost of funeral expenses,
in the absence of any other evidence, did not justify the sub-
mission of the reasonable expense thereof to the jury.

III. Exception is taken to the refusal of the court to
instruct the jury that the burden was upon the plaintiff "to
establish by a preponderance of the evidence that the fall-
ing of the slate from the roof that caused
the death of Frank Carnego was not one of
the dangers incident to the employment in
which said Frank Carnego was then and there
engaged," and that if he failed to do so, verdict should be
for the defendant.  There was no error, for the court had
submitted to the jury whether it was the duty of the defend-
ant to inspect and care for the roof at the point where de-
ceased lost his life, and that recovery could only be had in

3. MINES AND
MINING : negli-
gence : instruc-
tions : refusal
of request.

event the jury found that it owed him such duty and failed to perform it. The converse of this proposition also was stated in saying that if it was the duty of the deceased and those working with him to inspect and care for the roof of the entry, or that the entry was subject to change wrought by the deceased with others, and its condition was the result of what they did when in control thereof, there could be no recovery. These instructions included the proposition contained in the request. Indeed, it has often been held that practically there is no such thing as the assumption of a risk save that of the negligence of the employer, and that the servant of necessity enters into the employment of the master with reference to existing conditions or those created by the work, and surely if it was the duty of the defendant to inspect and care for the roof so as to render it safe, and it failed to do so, the servant cannot be said to have assumed also the duty of inspection or care as incidental to his employment. There was no error in refusing the instruction.

IV. The deceased would have attained his majority had he lived until October 7, 1913, so that the services to which plaintiff would have been entitled were for two years, four

4. SAME: infants: negligent death: damages.

months, and twenty-five days. In answer to special interrogatories, the jury found that he would have earned during this time $1,860.39; that the cost of his support and maintenance would have been $241.57, and plaintiff was allowed $300 for funeral expenses. The court, according to the briefs, concluded that the cost of maintenance would have been at least $738.85, and that the allowance for funeral expenses should not have exceeded $150, and required a remittitur of $643.81, reducing the judgment to $1,275. The evidence disclosed that during the twenty-six months previous to his death the deceased had earned as a miner $955.05, that the average earnings in the mine had been $52.36 a month, and that miners ordinarily at that particular mine are not employed to exceed 270 days a year, while in others the average is 217 and 218 days per

year. He earned a little over $62 per month during July and August, 1910, and from January 1, 1911, to May 12th of that year his entire wages amounted to but $160.50. He was working with three adults, receiving his equal share of the earnings, and these amounted to about $37 a month, and yet the jury on this evidence found that he would have earned but for his death $62 or $63 per month until he was of age.

The plaintiff was entitled to recover the present worth of the probable earnings of the deceased up to the time he would have become of age, less the probable cost of clothing, maintenance and the like (*Benton v. Railway*, 55 Iowa, 496), and it is manifest from the figures given that more than this was allowed.

If the plaintiff cares to file a remittitur of enough with the $150 allowed for funeral expenses to reduce the judgment to $1,000, with interest, within thirty days, it will stand affirmed, with costs; otherwise reversed. *Affirmed* on condition.

DEEMER, GAYNOR, and WITHROW, JJ., concur.