OSCAR REMINGTON, Administrator, Appellee, v. LOUIS MACHAMER, Appellant.

**APPEAL AND ERROR:** Scope of Review—Instructions—Waiver of Exceptions. Instructions not excepted to in the trial court will not be reviewed on appeal.

**APPEAL AND ERROR:** Insufficient Exception to Instructions. An exception to an instruction to the effect that "the court erred in giving Instruction No. 8 on the measure of damages" is wholly insufficient to raise any question.

**DEATH:** Funeral Expenses—Evidence. The issue as to the amount of funeral expenses is properly submitted to the jury on evidence showing (1) the amount of the bills, and (2) the fact that the charges were the general charges for such services. Especially is this true when the charges in question were manifestly moderate in amount.

**MUNICIPAL CORPORATIONS:** Ordinances—Presumption. The enactment of an ordinance, under Sec. 1571-m20, Code Supp., 1913, limiting the speed of automobiles on the public streets, may generate a presumption that the city has erected the warning signs provided and required by said section.

**EVIDENCE:** Relevancy and Competency—Condition of Place of Accident. Evidence is proper that, almost immediately following an accident, different articles of personal property having fair relation to the accident were found scattered along the place of the accident, even though no evidence was offered in the way of identifying the said articles.

**HIGHWAYS:** Automobile Accident—Jury Question in re Negligence. Evidence reviewed, and held to present a question for the jury on the issue of the negligence of an automobile driver and of a 14-year-old child who was attempting to cross a street between intersections.

*Appeal from Linn District Court.*—MILO P. SMITH, Judge.

JANUARY 10, 1922.

ACTION by plaintiff, as administrator, to recover damages caused by injury to and death of his daughter, Velma, while she was attempting to cross the roadway of a bridge over Cedar River, at B Avenue, in Cedar Rapids, Iowa, and was struck by defendant's automobile. The accident happened between 4 and 5 o'clock in the afternoon of September 16, 1916. Deceased was about 14 years of age. She died from her injuries September 19th. Deceased was attempting to cross at a point which was not an intersection or place provided for crossing by pedestrians. There was a trial to a jury, and a verdict and judgment for plaintiff for $1,000. Defendant appeals.—*Affirmed.*

*Redmond & Stewart* and *Charles Penningroth,* for appellant.

*Grimm, Wheeler & Elliott* and *Floyd Philbrick,* for appellee.

PRESTON, J.—The petition states that deceased died September 19th, and that, before her death, she was subjected to expense for medical care, attention, etc.; that, by reason of the injuries and death, her estate had been damaged; and that the claim is the property of plaintiff, as administrator. The negligence charged is that defendant was driving his car at an excessive and reckless rate of speed; that he did not have it under proper control; that he was negligent in not seeing and avoiding deceased, in failing to stop or turn said car aside after he saw, or should have seen, deceased, in failing to sound his horn or give any signal or warning of his approach, and in violating the ordinances of the city regulating the speed of such vehicles.

Deceased was proceeding west on the south side of the bridge, and when about a third of the way from the east end, attempted to cross the roadway from the south side of the bridge. Defendant was proceeding east, on the south or right-hand side of the bridge. Plaintiff's evidence tends to show that, before defendant struck the girl, and as he was approaching her, he was looking down the river, south and east of the bridge, where some men were making excavations for a power house; that he was traveling at from 20 to 25 miles an hour when he struck her; that it was while she was leaving the south sidewalk and was starting across the roadway that appellant was looking down

stream, instead of in front of his car; that, after the accident, defendant stated to plaintiff that he did not know the little girl was there until he felt the jar of the car; that, when she was struck, she was from 8 to 12 feet from the curbing on the south side of the bridge; that she was struck by the radiator and the right front fender; that there was sufficient space between deceased and the south curb for appellant to have passed behind her without striking her; that, when she was struck, her clothes caught on the car, and she was dragged until the car stopped, when she was found lying on the pavement beneath the right hind wheel of the car, the wheel resting on her leg or on her dress; that she was dragged and rolled from the front to the rear of the car before it stopped; that the car went from 20 to 30 feet after it struck her, before it stopped. A witness who helped pick her up, and went with her to the doctor's office, found a few spots of blood on his hand, after he took her to the doctor's office. Another witness saw some blood on her right thigh, as she lay on the pavement. Witnesses for plaintiff noticed skid marks on the smooth creosote blocks of the bridge paving, where the wheels had skidded after the brakes were set. Another witness found a comb, a button, and a piece of cloth, and saw some blood along the skid marks, and located these articles with reference to the beginning and ending of the skid marks, and with reference to the railing posts of the bridge.

The doctor who attended her testified that she died of peritonitis, caused by a ruptured bowel, the rupture being caused by extreme violence; and that the steels of her corset were bent at an angle of nearly 90 degrees.

The ordinances of the city prohibited the operation of a motor vehicle at a speed in excess of 15 miles per hour. Those near did not hear defendant give any warning signal. Deceased was strong and healthy. One witness testifies that she was carrying a small paper sack in her hand; another witness did not notice this, but says that the dashboard or runway of the car was scattered with salted peanuts. "Don't know whether she had them; don't know where they came from." A witness states that deceased was facing northwest at about the time she was struck.

Defendant's evidence tends to show that the bridge was

crowned, the highest point being at about the center of the bridge. It was also crowned laterally. The sidewalk on the bridge was eight feet wide, elevated some eight inches above the roadway. The creosote blocks were filled or covered with asphalt. There was nothing along the curb on either side of the bridge to interfere with one's vision. Defendant was accustomed to driving automobiles. He says it was his impression that he was going at about 10 or 12 miles an hour; that he didn't see deceased until she was right in front of his machine—immediately in front of him—was right on her; that he applied the brakes as soon as he saw her—got the brakes fully set before she was struck; that he stopped and got out of the car; that he swayed to the left to avoid her. He says he stopped the car, after he struck her, within the length of his Ford car; that he gave her assistance after the accident. He thinks he was about three or four feet from the south curb; was looking straight ahead, as he was driving.

There was more or less corroboration for both plaintiff's witnesses and those testifying for the defendant, and there is denial of some of plaintiff's evidence. We have set out enough to give a general outline. It will be noticed that there is a conflict in the evidence at some points.

1. Instructions Nos. 4, 7, and 8 are now complained of. No exceptions were taken to any of the instructions at the time. Thereafter, and in the motion for new trial, exception was taken to Instruction No. 5, which had reference to contributory negligence, as did also Instructions Nos. 6 and 7. Instruction No. 5 is quite similar to the one requested by plaintiff on the subject, except that there is some elaboration in the one given. No complaint is now made as to Instruction No. 5. No. 6 has reference more particularly to the duty of one attempting to cross a street at a place other than the regular crossing. No. 7 also refers to that subject. No complaint is made of this. The complaint of No. 7 is that it unduly emphasises the question of the age of deceased, as bearing on contributory negligence. The reference to her age in No. 7 is very brief; and if we were called upon to pass upon the question, we would be inclined to hold that there was no error. But the exception was to Instruction No. 5, of

1. APPEAL AND ERROR: scope of review: instructions: waiver of exceptions.

which no complaint is now made in argument, and no error is assigned as to that. The argument and assignment of error are now directed to No. 7, to which no exception was taken. Appellant is not entitled to a review of that question. Instruction No. 4 has reference to the rate of speed under the city ordinance introduced in evidence. There was no exception to No. 4.

2. Appellant attempted to except to Instruction No. 8, in the motion for new trial. The exception in the motion for new trial is as follows:

2. APPEAL AND ERROR: insufficient exception to instructions. "The court erred in giving Instruction No. 8 on the measure of damages."

Appellee contends that the exception is not sufficiently specific, and is, therefore, no exception at all. The point is well taken. The statute in force at the time of the trial of this case, Code Section 3709, as amended by Chapter 11, Acts of the Thirty-eighth General Assembly, provides that the exceptions shall specify the part of the charge or instruction objected to, and the ground of the objection. No. 8 is upon the subject of the measure of damages.

Appellant, in this court, objects to the instruction on different grounds. None of these grounds, and in fact no ground at all, was stated in the exception. Moreover, Instruction No. 8 is the same as defendant's offered Instruction No. 3, except that, at the end of No. 8, the court refers to the question of funeral expenses, medical attendance, and nursing. We do not understand appellant to complain as to these last named items, except as to funeral expenses, which will be referred to later in the opinion. As to all the rest of Instruction No. 8, defendant, because of the offered instruction, in the same language as that given by the court, may not now complain. *Grosjean v. Chicago, M. & St. P. R. Co.*, 146 Iowa 17, 23. Having invited the error, if any there was, defendant may not now take advantage of it. *Campbell v. Ormsby*, 65 Iowa 518, 520; *Andrews v. Chicago, M. & St. P. R. Co.*, 86 Iowa 677, 686; *Krehbiel v. Henkle*, 178 Iowa·770, 781; *Anderson v. Anderson*, 150 Iowa 665, 671.

3. Appellant complains that, by Instruction No. 8, the court did not limit the recovery to damages accruing to the estate after the minor would have attained her majority. They cite only

*Walters v. Chicago, R. I. & P. R. Co.*, 36 Iowa 458, and *Lawrence v. Birney*, 40 Iowa 377. These cases refer to personal earnings of the minor during minority, which belong to the parent. No claim was made for such damages in this case, and there was no evidence thereof; so that the question is not in the case, unless, perhaps, as it may be involved in the question as to the value of the estate of the deceased. The damages sued for herein were to recover damages to the estate of deceased; but, for the reasons before stated, the objection as now made to No. 8 may not be considered.

4. Another objection to No. 8 is that plaintiff, as administrator, was not entitled to recover for the funeral expenses. This matter was a part of Instruction No. 8. The funeral expenses are a charge against the estate of deceased, and the evidence shows that plaintiff paid the funeral expenses, as administrator. Possibly the father would be entitled to recover such expenses, under Code Section 3471. But since he paid them as administrator, we see no reason why he may not recover something therefor. The only case cited by appellant on this proposition is *Carnego v. Crescent Coal Co.*, 164 Iowa 552. This case has been modified somewhat by some of the later cases, which will be referred to in a moment. It is possible that Instruction No. 8 does not state the rule as definitely as our last case on the subject requires (*Brady v. Haw*, 187 Iowa 501). It was there said that the estate is entitled to recover something for funeral expenses. That it is a matter proper to be considered, because the value of the estate is affected, even though the funeral expenses are paid sooner than they would be otherwise paid, but for the premature death by reason of the injury. The defendant did not ask any instruction on this subject; and, as before shown, there was no exception to the instruction referring to funeral expenses. This being so, evidence was admissible, if not otherwise objectionable, as to funeral expenses. We take it that the real objection relied upon by appellant in regard to this matter is that the evidence was erroneously admitted for the reason that the administrator, who testified in reference thereto, was not shown to have known or to have been acquainted with the fair or reasonable value of the services rendered; that the general statement of the cost of

3. DEATH: funeral expenses: evidence.

funeral expenses did not justify the submission thereof to the jury. Under the record, this is the only question defendant is now in a position to raise. Defendant introduced no evidence on this subject, so that the evidence which was admitted was without dispute. The administrator testified, over objection, after having stated that he paid the bills as administrator, as follows:

"Q. Can you state to the jury what and how much these bills were? A. $480. Q. Tell what amount that is made up of, the various amounts, and for what? A. The undertaker's bill was $344."

Witness then gives the amounts of the hospital, doctor's, and nurse's bills. He continues:

"Q. Do you know what the fair charges for services of that kind are in Cedar Rapids, or was at that time? A. I didn't look around to see whether I could get the work done any cheaper or not. Q. Do you know about what it is customary to charge for such services, or about what it was at that time, I mean? A. It was the regular charges. I mean that the hospital charges and the nurse's charges were the same as they would charge anybody else; that is what they got. Q. Is that true of the other bills? A. Yes."

In the *Carnego* case, the evidence showed only the amount of the funeral expenses, and that they had been paid by the plaintiff. The court held that the evidence was admissible, and the question was whether it was sufficient to establish the reasonableness of the cost. The evidence goes further in the instant case, in that it shows that the witness testified that he knew that they were the reasonable or regular charges. In some of the later cases, the rule has been modified somewhat. The *Carnego* case was referred to in *Reutkemeier v. Nolte*, 179 Iowa 342, 353, where we said that, if the items and the cost of them had been disclosed, they might have furnished a sufficient basis for the jury to pass upon the reasonableness of the expense; that it was also said in the *Carnego* case, in recognition of our previous holdings, that, where the nature of the item is such that a jury would be likely to be familiar therewith, proof of payment is enough to carry the question of reasonableness to the jury (citing *Lampman v. Bruning*, 120 Iowa 167; *Scurlock v. City of Boone*, 142 Iowa 684). The issue in the *Reutkemeier* case was

as to the value of professional services of a doctor. In the instant case, as in that case, there is nothing startling in the amount of the bill for the services rendered. Most people have some idea of the ordinary charges. We think it is so in regard to funeral expenses. $344, in these times, would not strike an ordinary individual as exorbitant. There is nothing in the amount of the bill that tends to excite distrust as to its reasonableness. The entire recovery, as fixed by the jury, was but $1,000, which is clearly not excessive. The undertaker could have been called at a small expense, no doubt; and it seems to us this would have been the better way. But, had an expert testified as to the value, the jury would not have been bound by his testimony, but in connection therewith could use their own judgment. This has been held where the services were those of a medical expert as to doctor's services, and though undisputed, the case must go to the jury. *Fowle v. Parsons,* 160 Iowa 454. See, also, *Hoyt v. Chicago, M. & St. P. R. Co.,* 117 Iowa 296; *Hunter v. Empire State Sur. Co.,* 159 Iowa 114. We think there was no error in admitting the evidence, in regard to the undertaker's bill, and the hospital, doctor's, and nurse's bills. The manner in which the question was submitted to the jury may not, for the reasons before stated, be reviewed.

5. It is next contended by appellant that the court erred in admitting in evidence, over objection, parts of ordinances of the city as to speed. It is now urged that they were improperly

4. MUNICIPAL CORPORATIONS: ordinances: presumption.

admitted because there was no showing that the city had placed signs at the city limits, as provided by Section 1571-m20, Code Supplement, 1913. If that objection is included in the objection made at the time of the trial, it is not apparent. Several other reasons were given why it was claimed the evidence was not admissible, and there is the objection that it is incompetent, irrelevant, immaterial, and improper. We have held that this was not sufficiently specific to constitute any objection. *Harvey v. Mason City & F. D. R. Co.,* 129 Iowa 465, 482; *State v. Wilson,* 157 Iowa 698, 713; *State v. Madden,* 170 Iowa 230, 236; *Brier v. Davis,* 122 Iowa 59, 61. The rule is different where the objection is sustained. *Christenson v. Peterson,* 163 Iowa 708, 711. Appellant cites, in support of its objection to the admission of the ordi-

nances, *Incorporated Town of Decatur v. Gould,* 185 Iowa 203. That was a criminal case. The purpose of the statute in a negligence case is stated in *Pilgrim v. Brown,* 168 Iowa 177. In both those cases there was evidence describing the location and character of the signs. In the instant case, the record is silent as to whether there were or were not such signs. If the statute cited has any application to a case of this kind, then, under the record as here presented, the presumption obtains that the official acts of the council in passing the ordinances were regular, and that they had complied with all requisites for the proper passage of ordinances. 22 Corpus Juris 130, Section 69. Numerous Iowa cases are cited in the note.

6. It is thought that the court erred in admitting evidence of a witness who says he saw a button, a comb, a piece of cloth, and some blood along the skid marks, some of these at the beginning of the marks, others at the end. The objection is that there was no showing that these articles, when witness came there, were in the same place as at the time of the accident, and no showing that they belonged to this girl. It is true that these matters were not shown. The precise time at which the witness arrived does not appear; but, we take it, it was soon after the accident, since the skid marks were still there; and, as we understand it, there were other people still there after the girl had been taken to the hospital. The evidence was descriptive of conditions as they existed soon after the accident, and was proper to be considered with the other circumstances shown. There was evidence that the clothing of deceased caught on the auto, and that she was dragged. Defendant says he put on the brakes. There are other witnesses testifying to the skid marks. There was evidence that there was blood on the person of deceased, and on the hand of the man who carried her; and perhaps other circumstances tending to show how the accident occurred. The tendency of the evidence complained of was to show how the accident happened. There was other evidence tending in the same direction, and of eyewitnesses. It seems to us that the evidence was admissible; but in any event, considering all the circumstances, there could have been no prejudice.

5. EVIDENCE: relevancy and competency: condition of place of accident.

It would have been better, no doubt, had the connection been made; and it could have been easily done.

7. The court instructed the jury in regard to deceased's crossing the roadway at a point other than the regular crossing; and to such instruction there was no exception. Without again rehearsing the evidence, we are of opinion that

6. HIGHWAYS: automobile accident: jury question *in re* negligence.

the evidence was sufficient to take the case to the jury on the question of defendant's alleged negligence, and as to whether deceased was free from contributory negligence. *Wines v. Jones,* 183 Iowa 1166; *Livingstone v. Dole,* 184 Iowa 1340, 1346; *Roberts v. Hennessey,* 191 Iowa 86. There is evidence, though disputed, from which the jury could have found that deceased was far enough north of the sidewalk to allow defendant to pass south of her, but that, instead, he swerved to the north. There is a suggestion in argument that deceased was walking along the sidewalk eating peanuts. The only evidence in regard to the peanuts is that one witness says she was carrying a small paper sack of something in her hand, and another witness testifies that salted peanuts were found on some parts of the car.

There may be some other minor matters argued which we have not discussed in detail, and, as said, some questions are argued as to which appellant is not entitled to review. The points noticed are controlling. There being no prejudicial error, the judgment is—*Affirmed.*

STEVENS, C. J., WEAVER and DE GRAFF, JJ., concur.