MRS. ELSIE ANDREWS, Appellee, v. WESTERN ASPHALT PAVING CORPORATION, Appellant.

**ESTOPPEL:** Equitable Estoppel—Mere Silence as Estoppel. The mere fact that a property owner does not object to or protest against the erection of a plant on adjoining property,—in other words, remains silent,—does not estop him from maintaining appropriate action in case the operation of the plant constitutes a nuisance.

**NUISANCE:** Private Nuisance—Reasonable Care as Defense. If the construction and operation of a plant constitute a nuisance in fact, it is no defense that the plant was constructed and operated *in the usual and ordinary manner.*

**TRIAL:** Reception of Evidence—Right to Object. A litigant who— evidently in the belief that he will thereby score an advantage— permits a detail of what his assumed officer said on a certain occasion, will not later be permitted to object to testimony tending to show that the assumed officer was such in fact.

**DAMAGES:** Evidence—Secondhand Goods. The value of secondhand household goods, having no recognized market value, may be shown by testimony tending to show the *original* value and the condition at the time of trial, or other proper time in question.

*Appeal from Monona District Court.*—W. G. SEARS, Judge.

JUNE 23, 1922.

ACTION to recover damages to residence property occupied by plaintiff, and to her personal property on the premises, and for physical suffering endured by her, and for the annoyance, inconvenience, and personal discomfort suffered by the plaintiff in her home by reason of excessive smoke, cinders, fumes, dust, and sand cast upon and into her home and upon her personal

property by the operation of an asphalt plant erected by defendant, situated adjacent to the residence property, and operated for a period of four months. The case was submitted to a jury, which returned a verdict for plaintiff in the amount of $910.40. Judgment was rendered on the verdict, from which defendant appeals.—*Affirmed.*

*Henderson, Fribourg & Hatfield, Pritchard & Pritchard,* and *Robert B. Pike,* for appellant.

*C. E. Underhill* and *M. W. Newby,* for appellee.

ARTHUR, J.—I. In July, 1919, the defendant erected an asphalt plant or mixer on the right of way of the Illinois Central Railroad Company, in Onawa, Iowa, about 42 feet from the residence occupied by plaintiff, on the north and a little to the west of the house, and operated the plant for a period of about four months, while plaintiff was occupying as a residence the property above described, owned by Emma Craven. The asphalt plant was erected and operated for the purpose of making a hot mixture of asphalt and sand, to be used in paving streets in Onawa. A large movable crane was also operated at the plant, in unloading materials for the paving. The asphalt mixer was a plant 50 or 60 feet long and some 25 feet high. It consisted of a steam plant, with hoisting machinery, two large metal vats in which was boiled the asphalt, a large sand drum, and other equipment, and four furnaces, in which were used four or five tons of soft coal a day. A number of men were employed to operate the plant, and some of them worked during nights, wheeling and dumping coal into the bunkers, hoisting barrels of asphalt to the platforms, chopping them open, and dumping the contents into vats, where it was heated to a boiling liquid. Men also frequently worked at night in repairing machinery, and in so doing hammered and pounded on same almost continually. Numerous automobile trucks during the daytime came and went every few minutes, hauling the hot asphalt mixture from the plant to the street where the paving was being laid. The truck drivers, living in different parts of the town,

were called to work by whistles sounded at early hours of the morning.

Plaintiff's cause of action was alleged in two counts:   (1) For damages to the real property; and (2) for damages to her household goods, clothing, growing garden, and other personal property; and for physical suffering, annoyance, inconvenience, and personal discomfort suffered by the operation of the plant and machines adjacent to the premises occupied by her.

The damages to real estate, she alleged, were caused by the asphalt plant's being operated almost continuously, both night and day, since it continually caused and gave off dense clouds of smoke, soot, asphalt fumes, cinders, ashes, and other dirt, which, during the greater portion of the time, blew, settled, and drifted upon and into the dwelling house occupied by plaintiff and her husband.   The said smoke, soot, fumes, cinders, ashes, and dirt also drifted into and were blown into the inside of said dwelling house, and soiled, injured, and damaged the wall paper and the paint and varnish on the rooms on the inside of said dwelling house, and also destroyed, tarnished, and blackened the wall paper, walls, and woodwork, to such an extent that the same will have to be all refinished and gone over again; and the machines jarred and shook and racked the house, and caused the plastering therein to become cracked and loosened from the walls and ceiling; also, employees of defendant, in operating the plant and in driving trucks to and from the plant, destroyed the fences on and around the premises.

Plaintiff attached to her petition an itemized statement of such damages, such as cost of paint to repaint the house and outbuildings; cost of labor in repainting the buildings; cost of wall paper; cost of material and labor to reconstruct fences; and cost of material and labor and replastering of house, etc.

Plaintiff demanded damages to her personal property, and presented an itemized statement, consisting of damage to fruit trees and vegetables and household effects, and extra work required and done by her on account of soot and dirt which sifted into the house, etc.   Other items of damages were claimed in both counts, but were withdrawn from the jury by the court.

Defendant denied liability, in a general denial. As an affirmative defense, defendant alleged:

"That said asphalt plant and mixer and said machine were conducted and operated without any extraordinary or unusual emanations therefrom; and that the plaintiff knew, long before said plant was installed and said work was commenced, that said plant would be installed and said work commenced and prosecuted, and permitted said plant to be installed and the work to be commenced and prosecuted without any protest or objections whatever on the part of plaintiff or her assignors; and by said conduct on the part of the plaintiff and her assignor in not making objection or protest, defendant was induced to erect and operate said plant, and thereby plaintiff and her assignor are now estopped from claiming damages arising therefrom."

1. ESTOPPEL: equitable estoppel: mere silence as estoppel.

On motion of plaintiff, the special defenses of freedom from negligence and the pleading of estoppel were stricken.

There was no dispute in the facts as to the erection and operation of the asphalt plant and the effect upon plaintiff's property from the operation of the plant. The only evidence offered by defendant was in support of its affirmative defense presented, of freedom from negligence, and estoppel. As above stated, such affirmative defense was stricken at the beginning of the trial, before the introduction of evidence began. After plaintiff had rested, defendant offered the evidence of N. P. Randic, superintendent of the plant during the period involved, who had had some fifteen years' experience as superintendent of asphalt plants, to show that the plant was constructed and operated in the usual and ordinary manner. On objection of plaintiff, such testimony was excluded.

Defendant offered to prove:

"That the asphalt plant, the erection and operation of which the plaintiff complains, was commenced to be operated early in July, 1919; and prior to the time when said erection was commenced, and with the knowledge on the part of the plaintiff and her assignor of the intended erection thereof, and during the time the plant was being erected, the completion of which

was not until the latter part of August, 1919, neither the plaintiff nor her assignor made any objection or protest as to the location or intended operation of said plant; and that, by the knowledge of the plaintiff and her assignor, as aforesaid, and her acquiescence and her failure to object and protest against the erection of said plant, the defendant, relying thereon, was thereby induced to and did erect the said asphalt plant at an expense of $18,000, and operated the same.''

Objection was made that the offer was ''incompetent, irrelevant, and immaterial, and being no legal defense to this action;'' and the court ruled: ''The objection is sustained, holding that estoppel is not a defense in this case.''

Error is predicated on the withdrawal from the consideration of the jury of the issue of estoppel presented by defendant; and this presents the vital question in this case. This assignment covers and includes the ruling of the court in sustaining plaintiff's motion to strike that portion of defendant's answer in relation to estoppel; the refusal to permit defendant to introduce testimony offered, above set forth; the giving of Paragraph 5 of the instructions, in which the issue of estoppel was definitely withdrawn from the jury; and also the striking of the evidence of the witness Randic.

The refusal of the court to permit defendant to plead or show in evidence, by way of estoppel, that the asphalt plant in question was erected with the knowledge of the plaintiff, and without any objections or protest on her part to the erection of the same, was not error, if such knowledge and silence on her part would not prevent her recovery in this case. It was not alleged by defendant that plaintiff did or said anything to induce defendant to locate and operate its plant where it did. The claim in the pleading and testimony offered was that the plant was erected with the knowledge of the plaintiff, and without any objections or protest on her part to the erection thereof. If the pleading had been allowed to stand, and the testimony offered in its support had been received, the most that would have been proven would have been that plaintiff had knowledge that the plant was being erected, and her silence. On this exact point, in *Harley v. Merrill Brick Co.*, 83 Iowa 73, we said:

"There was nothing in her conduct from which acquiescence might have been inferred, unless from her silence. She claims that she objected to the construction of the works, and that her objections were made known through her husband. But if she did not so object, there was nothing done or omitted on her part which should estop her. to recover, if the defendant was not induced to act upon what she did or omitted to do."

Testimony offered was, in effect, that defendant relied upon the silence of plaintiff,—that is, her failure to protest against the erection of the plant,—and was induced by plaintiff's silence

2. NUISANCE: private nuisance: reasonable care as defense.

to erect the plant. It was not error to exclude such testimony, under the rule announced in *Harley v. Merrill Brick Co.*, supra; nor was it error to refuse to permit defendant to introduce evidence to show that the plant was constructed and operated in the usual and ordinary manner. In *Bowman v. Humphrey*, 132 Iowa 234, we said:

"Nuisance is a condition, and not an act or failure to act on part of the person responsible for the condition. If the wrongful condition exists, and the person charged therewith is responsible for its existence, he is liable for the resulting damages to others, though he may have used the highest possible degree of care to prevent or minimize the deleterious effects."

See, also, 21 Am. & Eng. Encyc. of Law 688.

II.  Complaint is made that C. E. Cooper, witness for plaintiff, and mayor of the town of Onawa, was permitted to testify to a conversation with a Mr. Everist, Everist being the

3. TRIAL: reception of evidence: right to object.

president of the defendant company. Cooper testified that he and Everist went to the plant together, with his (Everist's) foreman; that they went over into the yard of the Andrews home, and examined the yard as to the materials that were exhausted from the plant. This question was propounded to Cooper by counsel for plaintiff:

"Q.  State what condition you found there; also what was said between you and Mr. Everist."

No objection was made to this interrogatory.

"A.  We found there soot and dirt, besides the fine gravel

which I mentioned, or dust, which came through the blower. We also went into the house,—into the Andrews house,—and examined the interior, as well as the vegetation in the yard; and we found that this dust and dirt was coming through the windows, as well as on the floor of the porch outside; found the windows and doors closed in the house. At that time I was there with Mr. Everist, to see what the plant was doing, and what effect it was having on the Andrews home. And Mr. Everist made the remark to me that he didn't know what they could do; that the plant was stationed there, and there wasn't anything they could do that he knew of, to prevent the coal dust and this dust from blowing over there. He said, 'I suppose we could put up a screen there on the fence line running eastways.' But he didn't say whether he would do it or not. Q. Was that ever done, Mr. Cooper? A. No, sir. Q. Did you notice how it was affecting the vegetation around there? A. The smaller vegetation around the yard there was completely covered with it. Q. You don't know whether Mr. Everist was president of this paving company at that time or not? A. Yes, I would say that he was."

Defendant moved to strike this last answer, "Yes, I would say that he was," on the ground that it was a statement of a conclusion, which objection was overruled. Counsel did not object to Cooper's stating his conversation with Everist, perhaps because Everist's statements tended to show that there was no want of ordinary care in the operation of the plant. Cooper had before stated, without objection's being made, that Everist was connected with this paving corporation. We think it was not error to refuse to strike the answer, "Yes, I would say that he was," especially after the witness had been permitted to testify, without objection, to the statement of Everist, above set out.

III.   Complaint is made that plaintiff was permitted to introduce testimony showing services performed by her in extra cleaning and washing, made necessary because of the dirt cast into the house by the plant, and that the jury was instructed to allow recovery for the reasonable value of such work, if it found that such extra work had been performed on account

of the acts complained of, on the ground that Mrs. Andrews was not the head of her family, and that her services and time belonged to her husband, and that she could not recover in her own name for such extra services performed. These limitations and assignments were without merit, because it was admitted of record by counsel for defendant that Mrs. Andrews and her husband, S. W. Andrews, constituted the family, and that Mrs. Andrews was the head of the family.

IV. Defendant assigns as error that plaintiff was permitted to testify as to the cost of certain articles in the house, such as rugs and window shades, which had been purchased some four years before the trial, and the condition of the articles at the time of the trial, to fix the value and measure the damages to such articles, as not being proper measure of damages. This mode of ascertaining the value of the articles before and after the injury to them was not error. In *McMahon v. City of Dubuque,* 107 Iowa 62, we said, in referring to household goods and wearing apparel of the family which were destroyed by fire:

4. DAMAGES: evidence: second-hand goods.

"These had been used, were worn, and somewhat out of style. Such property has no recognized market value, and recovery must be based upon its actual value. * * * To ascertain the actual value, it was proper to take into consideration the original cost of the articles, the extent of their use, whether worn or out of date, their condition at the time, and from all these determine what they were fairly worth. The cost alone would not be the correct criterion for the present value; but it would be difficult to estimate the value of such goods except by reference to the former price, in connection with wear, depreciation, change in style, and present condition."

The same rule is announced in *Carnego v. Crescent Coal Co.,* 164 Iowa 552.

V. Errors are assigned as to measure of damages, and instructions involving other small items. We have examined each of these assignments, and find no prejudicial error, and deem it unnecessary to discuss them.

There is no question, under the evidence in this case, but that the plaintiff suffered injuries from the operation of this

asphalt plant, and made out a case entitling her to recover. We find no error in the instructions. We think that the case was fairly submitted to the jury. There is no occasion to disturb the verdict and judgment. The judgment of the trial court is affirmed.—*Affirmed.*

STEVENS, C. J., EVANS and FAVILLE, JJ., concur.