Coös,
May 4, 1909.

## CHALOUX *v.* INTERNATIONAL PAPER CO.

A father cannot maintain an action against one who has caused the death of his minor son through negligence, to recover damages for the loss of the child's services from the date of his death to the attainment of his majority.

A parent's right to the services and earnings of his minor child are not absolute, but contingent upon his actually providing support for the infant and retaining parental control over him.

CASE, for negligence. The declaration alleged that the plaintiff's minor son, on December 17, 1907, during his employment by the defendants and while in the exercise of due care, was instantly killed by the defendants' negligence. The action was brought by the father to recover for loss of the son's services from the time of his death during his minority. The defendants demurred. The question whether the demurrer should be sustained or overruled was transferred by *Pike*, J., from the December term, 1908, of the superior court.

*Henry F. Hollis*, for the plaintiff.

*Rich & Marble* and *Sullivan & Daley*, for the defendants.

BINGHAM, J. The question here presented is whether the plaintiff, whose son was instantly killed through the negligence of the defendants, can maintain an action for damages for the loss of the son's services from the time of his death until he would have attained his majority. It is conceded that there is no statute giving a right of action in such case. The plaintiff's contention is that recent decisions in this state recognize the existence of a right of action for damages for loss of service between death and majority; that at common law a father has an absolute legal right to the services and earnings of his minor son; that by reason of the defendants' negligence the plaintiff has been deprived of this right; that as the party possessing the right and the one who has infringed upon it are both in existence, the question of the survival of actions, urged as a reason for the conclusion reached in *Wyatt* v. *Williams*, 43 N. H. 102, does not arise; and that what is there said inconsistent with this contention is *obiter dicta* and not material to the decision of the case.

The recent cases upon which the plaintiff relies are *Carney* v.

*Railway*, 72 N. H. 364, and *Warren* v. *Railway*, 70 N. H. 362; but neither of them can be said to support the plaintiff's contention. In the former, the court was considering the question of damages recoverable under our statute (P. S., c. 191, s. 12) by an administrator of an estate of a minor child killed through the defendants' negligence; and it was held that the administrator could not recover for the child's "earning capacity" from the time of his death until he attained his majority, although he might from that time on, for the reason that under the statute "damages are to be assessed on the basis of the loss suffered by the deceased party and his estate," and if the son had lived, his earnings during minority, unless emancipated, would have belonged to his father, or in case of the father's death to the mother. It cannot be inferred from this holding that the court understood, or undertook to intimate, that the father could have maintained a suit for the loss of the son's services from the time of his death until he reached his majority. In the latter case the death of the child was not shown to have been instantaneous. This appears from the charge of the court to the jury. 209 Briefs and Cases 609, 611. The statement in the opinion—"had the child survived, the action would have been brought in its own name. The father's cause of action would have been what it is now—case for the loss of the child's service" —must be read with this fact in view; and when so read, it has reference to the father's right of action for loss of services prior to death.

In *Wyatt* v. *Williams*, *supra*, the court said : "At common law, for the killing of a human being, no civil action could be maintained against the person who caused it, . . . by a person standing in the relation of . . . father or master to the person killed, and the law was the same, whether the act which caused the death was felonious or not." And after discussing the various reasons assigned for the holding, it says that the rule is founded upon public policy, and if the reasons assigned "are various and not altogether consistent, yet the rule has been too long established, and too generally recognized as a settled principle of the common law, to be now shaken by anything short of a legislative act." This case was decided in 1861, and from that day to this no action has been brought in which the parent has been allowed damages for loss of services after the child's death—a fact reasonably conclusive as to the law in this state and of the understanding of the profession upon the subject. *State* v. *Railroad*, 52 N. H. 528, 548; *Bedore* v. *Newton*, 54 N. H. 117; *Whitaker* v. *Warren*, 60 N. H. 20; *Poff* v. *Telephone Co.*, 72 N. H. 164.

But there seem to be other substantial reasons why this action cannot be maintained. In *Campbell* v. *Cooper*, 34 N. H. 49, 62,

63, the subject was discussed at length, and it was there said: "At common law, the father is entitled to the services and earnings of his minor children, because he is bound to support and educate them. The right grows out of the obligation and is correlative to it. When one ceases, the other ceases also. The helplessness of the infant, demanding the tutelage and support of the father, in contemplation of law terminates in ordinary cases at twenty-one, and the child becomes emancipated from parental control and entitled to his own earnings. If by reason of continued helplessness, arising from physical or mental infirmity, the emancipation does not then take place, and the burthen of the support continues, the corresponding right to the services continues with it. If, anticipating the period of emancipation, fixed by law at the age of twenty-one, the father surrenders to the son the right to his earnings at an earlier age, and permits him to go into the business of life as his own master, while he thus continues independent of parental control the obligation to support him remains suspended. So, too, if the father drives his minor son from his home, and refuses to contribute to his support, the right to his earnings is also suspended so long as this dereliction of duty continues. But this obligation to support the child continues only during the lifetime of the father." He cannot, at common law, bind his infant children "to service after his decease," for the law "imposes upon the father no obligation to make provision for the support or education of his infant children after his decease. . . . The father is not to be considered as having an absolute right of property in the labor and services of his offspring until twenty-one. Whatever right he has, it is but a qualified and contingent interest, depending on their living with him and being maintained by him, and arising out of the personal trust under which he holds them for their protection and tutelage. While he continues to furnish them support, he may appropriate their earnings to his own use; but he has no present property in their future earnings, except as coupled with the condition that he shall be burthened with their support when the earnings accrue." And it was held that all power on the part of the father over the labor and services of his minor child ceases at the father's death, "except so far as such power may be conferred by statute."

In *Jenness* v. *Emerson*, 15 N. H. 486, a minor son was allowed to recover wages due for his labor and services, his father being dead and his mother insane and a pauper. It was there said: "As a general rule, . . . parents are under obligation to support their minor children, and in some degree liable for their education and entitled to their earnings"; that the "right to the services arises directly out of the duty and liability for support." And it

was held that inasmuch as the plaintiff's mother was a pauper at the time of his employment with the defendants, he was in no sense under her control and could be considered as emancipated; that parents are not entitled to the earnings of their emancipated children, and that they may be emancipated by misfortune as well as by the assent of their parents.

In *Kelley* v. *Davis*, 49 N. H. 187, the plaintiffs sought to recover from the defendant for necessaries sold to his minor son; and it was held that at common law a father was under no legal obligation to support his minor child, and that under our statute no action could be maintained against him for necessaries so furnished, "except by the town, and after notice to the person chargeable."

In *Hammond* v. *Corbett*, 50 N. H. 501, the defendant, a widow, was indebted to the plaintiff, and the plaintiff sought to hold in payment of the debt funds in the hands of the trustee and earned by the widow's minor son, who was not shown to have been emancipated or under guardianship. The court said that they "failed to discover any sensible ground for a distinction between the rights of a father and those of a widowed mother" to the earnings of a minor child; that neither of them at common law were under any legal obligation to support such child, but that the court thought, "as a compensation . . . for the support, nurture, care, protection, and education *actually afforded and furnished* to the child, the parent has a right to control and appropriate its earnings during minority," and were "inclined to hold that, in whatever principle this right is founded, whether it result from the very nature of maternal duties or from that of authority which, upon the husband's death, devolves upon her by reason of the guardianship for nurture, technically speaking; the mother is entitled to the child's services until her rights are suspended by the appointment of another guardian, or the arrival of the child at years of majority," or he is otherwise emancipated.

In *Aldrich* v. *Bennett*, 63 N. H. 415, it was held that "the right of a parent to the earnings of his minor child, upon whatever principle it is founded (*Hammond* v. *Corbett*, 50 N. H. 501), is commensurate with the right of custody. . . . Whatever, therefore, operates as a release from parental control necessarily terminates parental right of service; and the emancipation of the minor from legal parental authority, either by the voluntary act of the parent or by operation of law, puts an end to the legal claims of the parent to the minor's earnings"; that the marriage of the daughter, she being above the statutory age of consent, though entered into in defiance of the plaintiff's wishes and authority, was valid, and being inconsistent with the enforcement of parental rights, operated as an emancipation from them.

From these decisions it appears that the parent's right to the services and earnings of his minor child are not absolute, but contingent upon his actually providing support for the child and of his retaining parental control over him; and that when he ceases to provide support, or voluntarily or by operation of law releases his parental authority, his right to the child's services and earnings ceases. Because of these reasons, the decision in *Wyatt* v. *Williams*, and the fact that no action of this nature has ever been maintained in this state, we are of opinion that the demurrer should be sustained.

*Demurrer sustained.*

All concurred.