J. RAYMOND MINER, ADMINISTRATOR (ESTATE OF SALLY A. MINER) *v*. WILLARD G. McKAY ET AL.

DALY, C. J., BALDWIN, KING, MURPHY and MELLITZ, Js.

Argued October 10—decided October 28, 1958

*Robert Y. Pelgrift,* with whom, on the brief, was *DeLancey Pelgrift,* for the appellants (defendants).

*William P. Aspell,* with whom, on the brief, were *George Muir* and *Mary C. Fitzgerald,* for the appellee (plaintiff).

KING, J. This was an action claiming damages for the wrongful death of the plaintiff's decedent, caused by the negligent operation of a motor vehicle owned by the named defendant and operated by his son, the defendant Burton W. McKay. Liability upon the part of both defendants was admitted, and the sole issue presented to the jury was the amount of damages to be awarded. Death was instantaneous and therefore no ante-mortem elements of damage were present. The only item of special damage was a funeral bill of $456. The jury returned a verdict of $36,000, which the court refused to set aside as excessive. Since there were no requests to charge or exceptions to the charge as given, the charge is presumed to have been correct. *Mercier* v. *Naugatuck Fuel Co.*, 139 Conn. 521, 528, 95 A.2d 263.

We have recently had occasion to review our rule of damages in wrongful death actions. *Floyd* v. *Fruit Industries, Inc.*, 144 Conn. 659, 669, 136 A.2d 918. It is difficult, in the case of a young child with this long actuarial expectancy, to forecast the scope of the activities which, but for death, she would have carried on and enjoyed through a lifetime. The evidence, however, fully warranted the following statement of the trial court, in its memorandum of decision refusing to set aside the verdict: "The decedent was a girl nine years old, with an [actuarial] life expectancy of 65.25 years. The jury could have found from the testimony that she was a sweet child, courteous and attentive; that she had many friends [and] was well behaved; that she was active in the junior choir every Sunday [and] was in the top bracket of her class in scholarship, having marks of A and B; that socially she got along well; that she was a terrific worker and wanted extra work; [that she] was interested in the junior Girl Scouts [and] had ex-

cellent ability as a dancer; [and that she] was interested in music. Her father [had] worked for eighteen years for Pratt & Whitney and owned a six-room Cape Cod house. The jury could infer that she had good home surroundings." The scope of her activities also warranted an inference by the jury that her health and actual life expectancy were at least normal.

It is obvious that the decedent, from about every standpoint, gave promise of an adult life of at least average expectancy and rich in activities. The burden of proof on the issue of damages is on the plaintiff, and it appears that the jury were given almost every possible factual assistance in the task of evaluating this young life under our rule. Nothing appears to have occurred during the trial to inflame the jury or arouse prejudice or bias against the defendants.

Where, as here, the sole attack on the verdict is that it was excessive, the refusal of the trial court to set it aside is entitled to great weight. *McWilliams* v. *American Fidelity Co.*, 140 Conn. 572, 575, 102 A.2d 345. The memorandum of decision, citing *McKirdy* v. *Cascio*, 142 Conn. 80, 86, 111 A.2d 555, makes it clear that the court was correctly applying our test as to the permissible range of an award of damages for the death of a young child, such as this decedent, with most of life before her. While the wording we have employed in explaining this test has varied, the test itself has remained unchanged, and perhaps has never been better outlined than on pages 84 to 86 of the opinion in the *Cascio* case, supra.

There is no error.

In this opinion the other judges concurred.