Charles WARDLOW, Father of Steven D. Wardlow, a Minor and Deceased, Appellant,

v.

CITY OF KEOKUK, Iowa, Appellee.

Charles WARDLOW, Father of Sheri Lynn Wardlow, a Minor and Deceased, Appellant,

v.

CITY OF KEOKUK, Iowa, Appellee.

Noel J. PAGITT and Mary Jo Pagitt, Individually and as natural parents of Randall Lee Pagitt, Deceased, Appellants,

v.

CITY OF KEOKUK, Iowa, Appellee.

Noel J. PAGITT and Mary Jo Pagitt, Individually and as natural parents of Steven Craig Pagitt, Deceased, Appellants,

v.

CITY OF KEOKUK, Iowa, Appellee.

Nos. 54182, 54175 and 54176.

Supreme Court of Iowa.

Sept. 27, 1971.

Rehearing Denied Nov. 8, 1971.

Nolan, Lucas & Nolan, Iowa City, for Wardlow, No. 54182.

George E. Wright, Napier, Napier & Wright, Fort Madison, for appellants Pagitt, Nos. 54175, 54176.

Norman & Younggren, Keokuk, for appellee, No. 54182.

George L. Norman, Norman & Younggren, Keokuk, for appellee, Nos. 54175, 54176.

MASON, Justice.

Four interlocutory appeals have been consolidated for review in this court. A separate law action to recover damages by reason of the death of each of four minor children was instituted against the City of Keokuk. The trial court had struck from the petitions allegations concerning loss of companionship and society and those relating to mental anguish of the parents as not constituting proper measure of damages. All plaintiffs were granted permission to appeal from this interlocutory ruling. Rule 332, Rules of Civil Procedure.

Plaintiffs make identical contentions in assignments of error. They assert the court erred in striking, (1) the claim for loss of companionship, society and affections of the minor children and (2) the claims for mental pain and anguish suffered as a result of the wrongful death of the minor children. The assignments present the question whether loss of companionship and society of a deceased child and the mental anguish caused the parents by not only the facts but the manner of death are compensatory as damages.

Facts giving rise to these related actions occurred July 7, 1969. Four minor children, Randall Lee Pagitt, age 9; Steven Craig Pagitt, age 8; Steven D. Wardlow, age 8; and Sheri Lynn Wardlow, age 6, were playing in Rand Park, a public park owned and maintained by the City of Keokuk. All four children, while playing in a stream of water, were swept into a storm sewer opening in or near the park and drowned.

### Wardlow

The petition filed as a result of the death of Steven D. Wardlow is in three divisions. In each division it is alleged defendant's negligent operation and maintenance of the sewer caused Steven's death. In division 1 Charles Wardlow, as administrator of Steven's estate, seeks $50,000 as damages for loss to his decedent's estate. In di-

vision 2 Mr. Wardlow sues as administrator for burial and funeral expenses. In division 3 Charles and Sarah Wardlow, as Steven's parents, sue for loss of services during decedent's minority and asserted as a specific element of damage loss of his companionship, society, and affection, all in the amount of $23,900.

A similar petition was filed by reason of the death of Sheri Lynn Wardlow.

Defendant in answer to the Wardlow petitions stated as an affirmative defense the proximate cause of decedent's death in each case was accidental drowning in a flood of natural water.

September 24 defendant moved for dismissal of division 3 of plaintiffs' petitions for the reason they failed to allege a proper element of damages. Plaintiffs filed resistance and moved for adjudication of law points to determine whether those elements of damages objected to were proper.

February 26, 1970, the court, at request of the parties, disregarded the motion to dismiss and ruled on the motion for adjudication of law points. Rule 105, R.C.P. The court, after holding plaintiffs had alleged proper elements of damages for loss of services claimed in division 3, ruled the allegation relating to loss of companionship, society and affection in this division was not a proper element of damage.

March 3, plaintiffs filed an amended and substituted division 3 of the petitions alleging as a specific element of damage, besides loss of services, great mental pain and anguish suffered by the parents, again totaling $23,900.

March 6, defendant moved to strike plaintiffs' amended and substituted division alleging plaintiffs were merely repeating what the court had previously disallowed.

The court agreed plaintiffs' amended and substituted claim of damages, namely reimbursement for great mental anguish and suffering, was substantially the same as those disallowed—loss of companionship, society and affection.

No attack was directed to those divisions in which Mr. Wardlow made claim as administrator. Although the trial court ruled the portion of the claim asserted in division 3 for loss of services was based on allegations of proper elements of damages, the extent of recovery on the claim asserted in this division is directly affected by its ruling that loss of companionship and society of a deceased child and mental anguish of the parents resulting from his death were not proper elements to be considered by the trier of fact in arriving at the amount of award, if any.

### Pagitt

The petitions based on the death of the Pagitt children were each in four divisions. In division 1 Noel J. and Mary Jo Pagitt, individually and as natural parents of Randall Lee, sue for funeral expenses, loss of services, loss of companionship and society, and mental anguish in the amount of $50,000 plus five percent interest from date of judgment; in divisions 2, 3 and 4, plaintiffs, as parents, each time changed the theory of defendant's liability, but incorporated the same elements and amount of damage.

An identical petition was simultaneously filed by plaintiffs for the death of Steven Craig Pagitt.

Defendant moved to strike from the various divisions of plaintiffs' petitions the allegations relating to loss of companionship and society and mental anguish as elements of damage for the reason they do not constitute the proper measure of damages. The court sustained the motion.

Here the parents had included as an element for consideration on their claim for damages in each division allegations of loss of companionship and society and the suffering of mental anguish by them as parents resulting from the death of their chil-

dren. The court's ruling challenged in this appeal affects those allegations as proper matters to be taken into account by the trier of fact in arriving at the amount of award.

I. The right of action for wrongful or negligent death of another was unknown at common law and exists only by virtue of statute. DeMoss v. Walker, 242 Iowa 911, 915, 48 N.W.2d 811, 813. In Iowa damages recoverable for the death of another are engendered by section 611.20, The Code, (survival statute) and rule 8, R.C.P., (wrongful death of minor).

Reference is made in the survival statute to damages for wrongful death in general terms and without specific concern for minor decedents. The statute is in these words:

"Actions survive. All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same." See also sections 611.21 and 611.22.

However, the survival statute is not involved in this matter since only allegations of loss of companionship and society and mental anguish suffered by the parents were stricken from the petitions. Of course, these items could not properly serve as a basis for recovery for death of a minor under the survival statute. These allegations had been asserted by plaintiffs for the purpose of enhancing the amount of recovery possible in the actions brought by them as parents. Hence, our concern is with rule 8, a special provision covering minors. It follows:

"A father, or if he be dead, imprisoned or has deserted the family, then the mother, may sue for the expense and actual loss of services resulting from injury to or death of a minor child."

Those who may bring the action by reason of injury or death are specified in the rule in addition to the elements constituting the measure of damages for such injury or death.

The elements of damage recoverable under the code section and rule 8 are distinct. The rule purports to encompass all damages recoverable. by a father acting in his own right and "expense" has been interpreted as having reference to "the reasonable cost incurred for medical attendance, nursing, and the like, including that of suitable burial." Carnego v. Crescent Coal Co., 164 Iowa 552, 554, 146 N.W. 38, 39.

On the other hand the survival statute relates to damages recovered for the minor's estate by an administrator or other legal representative. These latter damages are then distributed among decedent's heirs according to intestate laws.

See generally 25A C.J.S., Death, §§ 95–110; 22 Am.Jur.2d, Death, sections 125–135; 14 A.L.R.2d 489; and Note, Wrongful Death Damages in Iowa, 48 Iowa L.Rev. 666, 684.

The major element of damages, recoverable under rule 8, is "loss of services." It has been long recognized in Iowa as a proper element. See Benton v. The C., R. I. & P. R. Co., 55 Iowa 496, 500, 8 N.W. 330, 332 and Carnego v. Crescent Coal Co., 164 Iowa 552, 561, 146 N.W. 38, 42, Ann.Cas. 1916D, 794.

■ There are two well-recognized limitations on the right to recover for loss of services. The first restricts recovery to benefits normally accrued during decedent's minority only, Lawrence v. Birney, 40 Iowa 377, 378–379, and the second reduces the recovery by the expense of rearing a child until majority. Benton v. The C., R. I. & P. R. Co., 55 Iowa at 500, 8 N.W. at 332 and Carnego v. Coal Co., 164 Iowa at 561, 146 N.W. at 42. Of course, recovery cannot be had under rule 8 for the death or injury of a minor child who has been emancipated by his father. Lipovac v. Iowa R. & L. Co., 202 Iowa 517, 522–523, 210 N.W. 573, 575–576.

■ In other words, the measure of damages for loss of services is the present value

of what the decedent would have earned during minority minus the amount it would have cost for his support and maintenance during such period.

■ It has been held to be immaterial whether the child is actually earning anything at all. It is also immaterial whether the parent was actually receiving the child's earnings if it is established that the parent had a right to the child's earnings and was liable for his support. See in this connection Hopkinson v. Knapp & Spalding Co., 92 Iowa 328, 60 N.W. 653 and Johnston v. Delano, 175 Iowa 498, 154 N.W. 1013.

We point out rule 8 is a restatement of section 10986, The Code, 1939. This or a similar statute has been in the Iowa code since the Revision of 1860. Those statutes and now rule 8 are remedial in nature, Schmitt v. Jenkins Truck Lines, Inc., 260 Iowa 556, 560–561, 149 N.W.2d 789, 791, to the extent of prescribing a means or method for obtaining redress for injuries to the father, in certain circumstances to the mother, as a consequence of the death of their unemancipated minor child. Insofar as the rule governs actions by the father seeking compensation on account of injuries to the child not resulting in death, it is perhaps only a codification of the common law.

As indicated at the outset of this division, the wrongful or negligent death of a minor gives rise in Iowa to two causes of action, one on behalf of the minor's administrator for those injuries which are personal to the decedent, section 611.20, the other on behalf of the father for loss of services during minority and expenses incurred on account of those injuries, rule 8. Actions brought under rule 8 are not for the injury to the child but for the injury to the father as a consequence of the injury to the child. See 67 C.J.S. Parent and Child §§ 40 and 41c.

In discussing rule 8 we have referred to the "father" as the one entitled to seek recovery. Of course, this is not meant to ignore the right of the mother under the circumstances set forth in the rule to institute the action.

It is in connection with actions under this rule that plaintiffs urge us to permit the trier of fact to consider loss of companionship and society of a deceased child and mental anguish of the parents resulting from the wrongful or negligent death in evaluating damages in actions brought under the rule.

The author of the annotation in 14 A.L.R. 2d 485, 488–489, tells us there is a marked conflict of authority as to whether the loss of the deceased minor's society, comfort and protection is an element of damages in a wrongful death action and whether an award may be made for the grief and mental anguish of the parents of the deceased minor. Some disagreement is attributable to differences in statutory provisions but a large part is simply due to conflicting opinions as to whether broad statutory provisions concerning damages ought to be limited by judicial construction or to a judicial search for a very elusive legislative intention.

II. We consider first the assignment based on the exclusion of the element of loss of companionship and society of a deceased minor from consideration.

The court arrived at its decision that this allegation asserted in division 3 of the Wardlow petitions and in all divisions of the Pagitt actions did not constitute a proper measure of damages after noting plaintiffs could not maintain an action in their individual capacities for the death of their children except under the provisions of the rule. It then expressed the view that the right of recovery must stand or fall by terms of the rule since the right cannot be extended to cases omitted from its provisions or applied to those not fairly within its purview. Citing Lipovac v. Iowa R. & L. Co., 202 Iowa at 519, 210 N.W. at 574, where the main contention on appeal involved the question of emancipation of the deceased minor by his father.

Where a father recovers in his own right, the theory of recovery is based on pecuniary loss caused by the death. Benton v. The C., R. I. & P. R. Co., 55 Iowa at 497, 8 N.W. at 331.

The principle announced in Benton and Carnego v. Crescent Coal Co., 164 Iowa at 561, 146 N.W. at 42, that the costs of support and maintenance of the child during minority is to be deducted in determining the amount to be assessed for the pecuniary loss caused by the minor's wrongful or negligent death appears to be the rule in most jurisdictions. See 14 A.L.R.2d at 502–504, where cases from this and other jurisdictions so holding are collected. See also 25A C.J.S. Death §§ 101 b(5), 103, and 114, and 22 Am.Jur.2d, Death, section 153 and authorities cited in support of the texts.

Plaintiffs maintain in support of their position that in light of this principle the pecuniary value of the loss of a minor child's services over and above his cost of support and maintenance, except in rare cases, is but a pure fiction. They cite in support Wycko v. Gnodtke, 361 Mich. 331, 105 N.W.2d 118; Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355; Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605; and Leahy v. Morgan, 275 F.Supp. 424 (N.D. Iowa E.D.). Plaintiffs quote extensively from these cases.

The Wycko v. Gnodtke decision is referred to in 27 Ohio St.L.J. 355, where the writer in observing Recent Developments discusses Currie v. Fiting, 375 Mich. 440, 134 N.W.2d 611 and makes this statement:

"Wrongful death statutes may be classified into three categories with reference to recovery for the loss of society and companionship of a child: (1) statutes expressly allowing relief; (2) statutes allowing damages which are fair and just and under which jurisdictions have split in permitting recovery; and (3) statutes expressly limiting damages to pecuniary loss.

"Prior to 1960 the states in the third category uniformly refused to allow a parent to recover for loss of society and companionship since it was thought not to be a pecuniary loss; but in that year the Michigan Supreme Court, in *Wycko v. Gnodtke*, supplemented the traditional measure of damages by holding that the loss of society sustained by a parent as a result of a child's death was a pecuniary loss." (emphasis in the original)

Soundness of the Wycko decision was questioned by a divided court in Breckon v. Franklin Fuel Company, 383 Mich. 251, 174 N.W.2d 836.

Fussner v. Andert, 261 Minn. at 351, 113 N.W.2d at 358, involves a Minnesota statute originally modeled after and enacted somewhat contemporaneously with Lord Campbell's Act. It was silent as to the kind and nature of damages to be recovered. The Minnesota statute, Minn.St. 573.02, subd. 1 in effect at the time of Fussner provided:

" * * * The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death, * * *."

The difference in this statute and rule 8, R.C.P. is obvious.

Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605, concerns a Washington statute which is not set out in the opinion but appears as a footnote in an observation of Recent Developments, 43 Wash.L.Rev. 654, 655. Wash.Rev.Code, section 4.24.010, in force at the time of the Lockhart decision, provided:

"A father, or in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a minor child, or a child on whom either is dependent for support, and the mother for the injury or death of an illegitimate minor child, or an illegitimate child on whom she is dependent for support." It was later amended to provide a measure of damages. See 43 Wash. L.Rev. at 657, n. 17.

The statute considered in Lockhart created a right of action for injury or death of a minor child but prescribed no measure of recovery. It differs from rule 8, R.C.P., in this respect.

The fact there is a trend toward developing a new element of damages recoverable by the father in actions brought by him in his individual capacity for the wrongful death of his minor child is recognized in Leahy v. Morgan, 275 F.Supp. at 426, and the second paragraph of the quote from 27 Ohio St.L.J. set out, supra, and the following statement from Prosser, Law of Torts, Third Ed., page 930:

" * * * Recent years, however, have brought considerable modification of the rigid common law rules. It has been recognized that even pecuniary loss may extend beyond mere contributions of food, shelter, money or property; and there is now a decided tendency to find that the society, care and attention of the deceased are 'services' to the survivor with a financial value, which may be compensated. This has been true, for example, not only where a child has been deprived of a parent, and there is allowance for the value of 'substitute mother' care, but also where the parent has lost a child, and substitution is scarcely in the picture."

In Iowa damages for the value of services and support as a spouse or parent or both are recoverable in actions for wrongful death. Section 613.15, The Code, set out infra.

The other case mentioned, supra, as among those cited by plaintiffs, Leahy v. Morgan, involved an action by administrator for the wrongful death of his deceased son and one by the father and decedent's mother as plaintiffs individually. Defendants moved to strike and dismiss from plaintiffs' complaint allegations asserting as a measure of damages great mental pain and suffering to the father and the loss of the "society, services, companionship and affection" of his minor child as not recoverable under Iowa law.

Defendants' motion was also directed to the administrator's prayer for exemplary damages. This portion of the motion is immaterial to the case before us.

In interpreting rule 8 of the Iowa Rules of Civil Procedure the court was not moved to strike the allegations regarding mental pain and suffering. The court construed the rule as precluding the mother from prosecuting any claim for loss of services of the deceased minor but determined the rule should not be construed as limiting the mother's claim in any other way.

The court in arriving at this conclusion felt it necessary to separate "loss of services" from "loss of society, companionship and affection."

The decision is not helpful to plaintiffs' position here.

The Supreme Court of Florida commented on the Leahy case in Atlas Properties, Inc. v. Didich, 226 So.2d 684, 687–688, (1969).

Although the Minnesota and Washington decisions cited, supra, are based on statutes distinct from our rule 8, much of what is said in those opinions make good sense when applied to the problem before us.

This is particularly true of the following statement from Fussner v. Andert, 261 Minn. at 352, 113 N.W.2d at 359:

" * * * As applied to a child, the narrow pecuniary-loss test, which excludes loss of aid, comfort, and society, may have met the needs of the community in the last century when our society was largely rural and a child might be considered an economic asset. The changes which have occurred in the social and economic life of the community since the test was first adopted require a reappraisal of its meaning and application. We must view the death-by-wrongful-act statute in the light of present-day conditions. It must be conceded that the majority of today's children render far less service to their parents than did children in the last century when the test was formulated. Because of child-

labor laws and the great increase in school and college attendance, fewer children work outside the home. It should be agreed that generally the child's earnings may go no further than to supplement the parent's considerable financial outlay in educating and rearing him. To say as a general rule that a parent sustains a financial loss from the death of a minor child is not realistic. When the cost to the parent of raising and educating the child is considered, it is apparent that the strict adherence to the pecuniary-loss test would in many instances prevent any recovery whatever. Probable cost of raising him to maturity and educating him would be far greater than the provable value of his services. We cannot agree that loss of earnings, contributions, and services in terms of dollars represents the only real loss the parent sustains by the death of his child. With the passage of time the significance of money loss has been diminished. Conversely, there is a growing appreciation of the true value to the parent of the rewards which flow from the family relationship and are manifested in acts of material aid, comfort, and assistance which were once considered to be only of sentimental character."

We recognize the court in Fussner speaks of "pecuniary-loss test" while our rule permits recovery for "loss of services." However, as pointed out this court in Benton v. The C., R. I. & P. R. Co., 55 Iowa at 497, 8 N.W. at 331, said the theory of recovery in actions brought by a father in his individual capacity is based on "pecuniary loss." We think the statement from Fussner is material here.

Lockhart v. Besel, 71 Wash.2d at 114, 426 P.2d at 607–609, states the same thoughts in different words in affirming plaintiff's contention the trial court erred in omitting from its instruction on damages the following: "You may also consider the loss of companionship to the parents brought by the death of said child." The Washington court recognized that, " * * [E]conomic conditions and our way of life have so significantly changed that to say

the pecuniary value of the loss of a minor child's services over and above his cost of support and maintenance, except in rare cases, is not a pure fiction can no longer be ignored. We must now conclude that to award more than nominal damages in every case where we limit damages to the loss of a minor child's earnings above the cost of his support and maintenance, is an affront to reason and logic."

The Lockhart case is the subject of discussion in the observation of Recent Developments, 43 Wash.L.Rev. 654, previously cited.

In addition to the reasoning in those opinions, there is another matter for consideration in determining the question presented—the fact that in order to permit consideration of loss of companionship and society as an element of damages for "loss of services" in actions under rule 8 would not require reversal of any prior decision of this court.

In Cerny v. Secor, 211 Iowa 1232, 234 N.W. 193, an action by an administrator under our survival statute, the contention was made plaintiff administrator was not entitled to recover damages for pain and suffering of the deceased minor or for loss of companionship, lacerated feelings, mental pain or bereavement suffered by his family or for the loss of support. It was argued the loss recoverable was the loss resulting to the estate from untimely death. Stated otherwise, the measure of recovery is the reasonable present value of his life to his estate.

Insofar as the case served as authority for proscribing consideration of pain and suffering of a deceased as an element of damages recoverable by his estate, it was overruled by Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509.

The fact Cerny was an action under the survival statute makes it distinguishable from the case here since section 613.15, which permits recovery as damages in tort actions by the estates of both men and women for the loss of support and services

as spouses or parents, makes no provisions in survival actions, even as amended, for damages for loss of services of a child.

The case cannot be considered as a basis for decision here.

DeMoss v. Walker, 242 Iowa at 915, 48 N.W.2d at 814, has this statement:

"Neither the next of kin nor the representative of the estate can recover from the defendant on the basis of sentiment or solace for grief or *for loss of society*." (emphasis supplied)

This was an action by the administrator for the death of a 77-year-old decedent whose husband had predeceased her by some years. Her six surviving adult children had established homes of their own and she was living alone at the time of her death.

On appeal plaintiff maintained the court erred in instructing the jury on the matters to be considered in arriving at the amount of their verdict. Plaintiff had requested an instruction based on what is now section 613.15, The Code. Complaint is made that the jury was not told they could consider not only the pecuniary loss to decedent's estate by her untimely death but also *her services as a mother* in arriving at their verdict.

Recognizing that the statute made provision for the value of a woman's services as a mother, the court reasoned this to mean value of those services which the evidence shows were rendered by her in her capacity as a mother. This court found that under the record there was no evidence of services rendered by decedent as a mother.

It is in this connection that the quoted statement, supra, was made.

When the court instructs the jury on a certain question there must be some evidence upon which to base such instruction since it is error to submit an instruction having no support in the record and a mere scintilla is not enough. Clubb v. Osborn, 256 Iowa 1154, 1160, 130 N.W.2d

648, 652. This was the actual basis for affirmance in DeMoss. The quoted statement was not necessary for decision.

In addition to the quoted statement, supra, the opinion quotes this from Armbruster v. Chicago, R. I. & P. Railway Co., 166 Iowa 155, 163, 147 N.W. 337, 340: " 'Only compensatory damages as a consequence of wrongful death are recoverable in Iowa.' " The quoted statement was made by the court in Armbruster in connection with the claim for exemplary damages.

In view of its facts the decision does not lend support to the trial court's decision striking the allegation of loss of companionship and society from the petitions involved.

Statements in Donaldson v. The Mississippi and Missouri Railroad Company, 18 Iowa 280, 290, bearing on consideration of pain and suffering of decedent and loss of his society for a deceased spouse and parent no longer represent the law in Iowa in view of Fitzgerald v. Hale, supra, and section 613.15, The Code.

Because of the frustration that comes to a lawyer from reading a decision of a foreign jurisdiction which refers to its statutes which are not set out in the opinion or in footnotes, we prefer, at the expense of being prolix, to set out section 613.15.

"Injury or death of spouse—measure of recovery. In any action for damages because of the wrongful or negligent injury or death of a woman, there shall be no disabilities or restrictions, and recovery may be had on account thereof in the same manner as in cases of damage because of the wrongful or negligent injury or death of a man. In addition she, or her administrator for her estate, may recover for physician's services, nursing and hospital expense, and in the case of both women and men, such person, or the appropriate administrator, may recover the value of services and support as spouse or parent or both, as the case may be, in such sum as the jury deems proper; provided, however,

recovery for these elements of damage may not be had by the spouse and children, as such, of any person who, or whose administrator, is entitled to recover same."

The pronouncements in Fussner v. Andert and Lockhart v. Besel, both supra, support our conclusion that to hold no recovery beyond nominal damages plus medical and funeral bills can be had in actions for wrongful death when there is competent substantial evidence in the record of loss of companionship and society of a deceased minor would render nugatory rule 8 granting the father a cause of action for the death of his deceased unemancipated minor child.

■ Rule 8, insofar as it provides a remedy for wrongful death, is remedial in character and it is the court's duty to construe it in the light of current social conditions.

We are not unaware of the argument in support of the proposition that where a statute has received a judicial construction and is substantially re-enacted, such construction may be regarded as having been adopted by the legislature. This is a forceful contention when a court is considering reversing its previous decisions construing a statute. However, even then it does not constitute a bar but merely a fact to be weighed in determining the advisability of changing a previous construction. Fitzgerald v. Hale, 247 Iowa at 1205, 78 N.W. 2d at 515. Here we are not confronted with the argument because we are not reversing a previous construction of the statute but are considering a question presented for the first time to this court.

■ We therefore hold where an action is prosecuted by the father, or in the circumstances permitted by the mother, for the wrongful death of a minor under rule 8 loss of companionship and society of the minor during his minority is a proper element to be considered by the trier of fact in fixing the amount awarded for "loss of services" without giving any consideration for grief, mental anguish or suffering of the parents by reason of such child's wrongful death.

Since the right of recovery for wrongful or negligent death is wholly statutory, this extended recovery is limited by the precise language of rule 8 to injuries to the father, again except in those circumstances where the rule gives the mother the right of action. Otherwise, the mother is precluded from bringing action for "loss of services" resulting from the death of a minor child.

The rulings of the trial court striking the allegations asserting loss of companionship and society from division 3 of the Wardlow petitions and from all divisions of the Pagitt petitions are reversed so far as the fathers' right of action is concerned. The mothers' actions are to be dismissed.

■ III. Our research does not convince us the element of mental anguish incurred by the parents as a result of the death of their children is a proper matter for consideration in fixing the amount of recovery under rule 8. The ruling of the trial court in this respect is affirmed. See authorities cited in 14 A.L.R.2d 595–598.

On remand the trial court shall reinstate the allegations of loss of companionship, society and affection of the deceased children during their minority as plead in the original division 3 of the Wardlow petitions and in all divisions of the Pagitt petitions. The parties shall then proceed on the claims asserted in these divisions in accordance with the Rules of Civil Procedure as actions seeking recovery for injuries to the father.

The cases are therefore—Affirmed in part, reversed in part, and remanded with directions.

RAWLINGS, BECKER, REES and REYNOLDSON,[1] JJ., concur.

All other Justices dissent.

STUART, Justice (dissenting).

I respectfully dissent from the majority opinion. I believe the majority is legislating under the cloak of construction.

As pointed out by the majority, there was no action at common law for wrongful death. Recovery here must be based on Rule of Civil Procedure No. 8 which in its material parts provides: "A father * * * may sue for the expense and actual loss of services resulting from * * * death of a minor child." Substantially the same provision has been in the Code since 1860. The majority holds "loss of companionship and society of the minor during his minority is a proper element to be considered by the trier of fact in fixing the amount awarded for 'loss of services' ".

While I concede that, in most instances, it is pure fiction to claim a parent suffers a pecuniary loss over and above expenses from the loss of a child's services during minority under present day conditions and there are sound practical reasons for allowing recovery on some other basis, I believe this is a legislative problem. Our problem is simply one of statutory construction. The question is, what was the intent of the legislature when it created a cause of action in the father for "actual loss of services"?

The majority borrows the sentence, "We must view the death-by-wrongful-act statute in the light of present-day conditions", from Fussner v. Andert (1961), 261 Minn. 347, 113 N.W.2d 355, 359. Neither cite authority for this approach to statutory construction and it appears to be contrary to the established rules.

"Since the words of a statute must be taken in the sense in which they were understood at the time when the statute was enacted, and the statute must be construed as it was intended to be understood when it was passed, statutes are to be read in the light of attendant conditions at the time of their enactment. A new meaning may not be given the words of an old statute in consequence of changed conditions. The fact that events probably not foreseen by the legislature have occurred, does not permit the court to undertake to enact new law." 50 Am.Jur. 224, Statutes, § 237. Ferguson v. Brick (1957), 248 Iowa 839, 845, 82 N.W.2d 849, 852; Case v. Olson (1944), 234 Iowa 869, 872, 14 N.W.2d 717, 719; 50 Am.Jur. 224, Statutes, § 326; 82 C.J.S. Statutes §§ 329, 351 and 353.

The quotes in the majority opinion from Wycko v. Gnodtke (1960), 361 Mich. 331, 105 N.W.2d 118, Fassner v. Andert (1961), 261 Minn. 347, 113 N.W.2d 355, and Lockhart v. Besel (1967), 71 Wash.2d 112, 426 P.2d 605, are sociological arguments which show the construction of "pecuniary loss" to include loss of companionship and society is based on present day conditions and the changes that have occurred since the enactment of the statutes. They offer good reasons why pecuniary loss or loss of services is no longer a good measure of damages for the wrongful death of a child, but do not support the conclusion that the legislature intended loss of companionship and society in such term when the statute was enacted.

The majority points out that the Michigan court has recently questioned the soundness of the Wycko decision. As I read the case of Breckon v. Franklin Fuel Company (1970), 383 Mich. 251, 174 N.W. 2d 836, the Michigan court in a 5–2 decision repudiated the point in the Wycko case upon which the majority relies and now

---

1. This matter was orally argued and submitted before Justice Reynoldson's appointment to the court. Since the case is here on the pleadings which raise legal issues only, Justice Reynoldson, having had opportunity to study the printed abstract of record and the written briefs and arguments, has participated in the consideration and determination of the appeals with the unanimous consent of the other members of the court.

holds that companionship and society are not proper elements of a pecuniary loss. The court in that case takes the position that language so indicating in Wycko was just dictum.

Fussner v. Andert (supra), is authority for the construction urged by the majority, but in my opinion it is pure judicial legislation.

It is true there is no Iowa authority holding that loss of society and companionship are not included in the term "actual loss of services", but it is obvious from the cases which have considered the problem that loss of services has been restricted to services in the ordinary sense of the word.

In Lipovac v. Iowa Railway and Light Company (1926), 202 Iowa 517, 522, 210 N.W. 573, 575, we said: "A father can have no reasonable expectation of pecuniary benefit from the continued life of a son who, although possessing a strong filial love, is without property and is incapacitated from labor of all kinds * * *." See also: Carnego v. Crescent Coal Company (1914), 164 Iowa 552, 660, 146 N.W. 38, 42; Hopkinson v. Knapp & Spalding Co. (1894), 92 Iowa 328, 332, 60 N.W. 653, 655; Benton v. C., R. I. & P. Railway Co. (1881), 55 Iowa 496, 500, 8 N.W. 330, 332.

The fact that the actual loss of services is limited to a minor unemancipated child and the fact that the right to recover is restricted to the one legally entitled to the child's services are further indications that the loss is confined to services the parent could legally require from a child. The loss of society and companionship is not ended because a child reaches its majority nor is the father the only one damaged by loss of society and companionship. The emancipation of a child does not eliminate a loss of his society and companionship from his wrongful death. I do not believe it is possible to conclude that the legislature intended at the time of the enactment to include loss of society and companionship in the phrase "actual loss of services". The majority does not even make such claim but construes the statute under present day conditions. I do not think this is proper.

I do not deny the inadequacy of the present measure of damages for the wrongful death of a child. If I were in the legislature, I would vote to change it. But, when the cause of action is created by statute and the measure of damages specified therein, I do not believe it is the prerogative of the court to change it, regardless of the merit of the change. We should not legislate under the guise of construction.

MOORE, C. J., and LeGRAND, J., join in this dissent.

UHLENHOPP, Justice (concurring in part, dissenting in part).

Can the parents of a minor child recover for their grief and loss of affection, society, and companionship in a negligence action for the child's death? The answer turns on the meaning of "actual loss of services" in Rule 8, Rules of Civil Procedure.

Plaintiffs, two married couples, were the respective parents of four minor children who were swept into an open sewer and drowned, due to defendant's alleged negligence. Plaintiffs sue as fiduciaries and as parents for the wrongful deaths, and ask the usual items of damages in such cases. Defendant does not attack those items of damage. In addition, plaintiffs ask damages as parents for their grief and for the lost affections, society, and companionship of their children. On defendant's motion, the trial court ruled that these items of damage are not recoverable. We permitted plaintiffs to take these interlocutory appeals in which they challenge the trial court's rulings.

We may put aside those cases in which a parent claims a direct tort was committed upon him or her, as where a tort-feasor negligently runs down a child in a pregnant mother's presence causing her to miscarry.

Those are the cases of injury without impact. Restatement, Torts 2d § 436(3). We are concerned here with torts upon the children and with the brief of the parents and their loss of affections of the children.

At common law a personal action died with the victim. Baker v. Bolton, 1 Camp. 493, 170 Eng.Rep. 1033. This harsh rule led to Lord Campbell's Act in England and to similar acts in this country. These acts are of two basic kinds, and the difference between the two kinds is important. The English act and most of the acts in America are *death* acts; they provide a new cause of action to the survivors *for the survivors' own damages*. But in a few states *survival* acts were adopted, which preserve in the fiduciary a cause of action *for the decedent's damages*. The general Iowa act is a survival act and provides in § 611.20, Code, 1971:

> All causes of action shall survive and may be brought notwithstanding the death of the person entitled or liable to the same.

See Cardamon v. Iowa Lutheran Hospital, 256 Iowa 506, 128 N.W.2d 226; Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509; Leahy v. Morgan, 275 F.Supp. 424 (N.D. Iowa); Blake v. Midland Ry., 21 L.J.Q.B. 233, 118 Eng.Rep. 35; McCormick, Damages, § 93 (1935); Jones, Civil Liability for Wrongful Death in Iowa, 10 Iowa L.Bull. 169; Comment, 46 Iowa L.Rev. 944.

*Grief and Lost Affections, etc. Under Death-Type Acts.* Since parents' grief and lost affections constitute damages of survivors, and since death-type acts allow survivors to recover their own damages, one would expect those damages to be recoverable under such acts if the language of the particular act is broad enough to include those items. That is exactly what the decisions reveal. The items recoverable under most of death-type acts are couched in terms of "damages," "losses," "pecuniary injuries," "pecuniary losses," or broader words, and the trend is to give such words liberal application. (Lord Campbell's Act itself provided broadly that "the Jury may give such Damages as they may think proportioned to the Injury resulting from such Death. * * *" 9 & 10 Vict. ch. 93, § 2.)

As to *grief*, some death-type acts have been held sufficiently broad; others have not. The California act provides, "[S]uch damages may be given as under all of the circumstances of the case may be just * * *." Cal.Code Civ.Proc. § 376. This broad language has been held to encompass the grief of those left behind. Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912. The Idaho act also provides that "such damages may be given as under all of the circumstances of the case may be just." Idaho Code Ann., §§ 5–310, 5–311. This language has been held not to cover grief. Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682. South Carolina has a broad death act: "In every such action the jury may give such damages * * * as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought." S.C.Code, 1962, § 10–1954. This sweeping language has been held to include survivors' grief. Zorn v. Crawford, 252 S.C. 127, 165 S.E.2d 640. The Utah act, similar to the Idaho act, has been held not broad enough to encompass grief. Utah Code Ann. §§ 78–11–6, 78–11–7; Webb v. Denver & R.G.W. Ry., 7 Utah 17, 24 P. 616.

As to recovery of *lost affections, society, and companionship* under death-type acts, the same situation prevails. Frequently the language of those acts is broad enough to comprehend such damage. Thus the broad California act previously quoted authorizes recovery of such losses. Fuentes v. Tucker, 31 Cal.2d 1, 187 P.2d 752. So does the act in Idaho. Hayward v. Yost, 72 Idaho 415, 242 P.2d 971. In Kentucky, however, the Lord Campbell version was held to be too narrow to cover lost affection, society, and companionship. Phillip's Committee v. Ward's Adm'r, 241 Ky. 25, 43 S.W.2d 331. A specific act allowing the item was passed. Ky.G.A. (1968), ch. 30, § 2. But in Louisi-

ana the Lord Campbell version was held to be broad enough. La.Stat.Ann.Civ.Code, art. 2315; Aymond v. Western Union Tel. Co., 151 La. 184, 91 So. 671. The Michigan death-type act allows damages for "pecuniary injury" and was held to include this item. Wilson v. Modern Mobile Homes, Inc., 376 Mich. 342, 137 N.W.2d 144; but see Breckon v. Franklin Fuel Co., 383 Mich. 251, 174 N.W.2d 836. The Minnesota death-type act provides, "The recovery in such action is such an amount as the jury deems fair and just in reference to the pecuniary loss resulting from such death * * *." Minn.Stat.Ann. § 573.02(1). This includes lost affections, society, and companionship. Fussner v. Andert, 261 Minn. 347, 113 N.W.2d 355. The broad Mississippi statute allows such amount " * * * as the jury may determine to be just, taking into consideration all the damages of every kind * * *." Miss.Code Ann. § 1543. The item of lost affections is included. Boroughs v. Oliver, 226 Miss. 609, 85 So.2d 191. The broad South Carolina act, quoted before, covers lost affections. Zorn v. Crawford, 252 S.C. 127, 165 S.E.2d 640. The South Dakota legislature changed the damage language in its act from "pecuniary" to "all" injury, and the item of lost affections was thereafter held recoverable. Lanning v. Schulte, 82 S.D. 528, 149 N.W.2d 765. Lost affections were held included in the conventional Lord Campbell type of act in Utah and in Washington. Van Cleave v. Lynch, 109 Utah 149, 166 P.2d 244; Lockhart v. Besel, 71 Wash.2d 112, 426 P.2d 605.

*Grief and Lost Affections, etc. Under Survival-Type Acts.* When we come to survival-type acts, however, a different situation exists. Here the damages recoverable are those of the deceased—his medical expense, pain, and loss of future accumulations. Hence one would expect that the damages of the survivors, of whatever nature, would not generally be recoverable. Again this is what the decisions reveal.

Connecticut has a survival statute. Gen. Stats.Conn., Rev.1958 (1969 Supp.), § 52–555. The damages recoverable are those of the deceased and do not include the suffering of the family. Miner v. McKay, 145 Conn. 622, 145 A.2d 758. New Hampshire has a similar act. N.H.Rev.Stats.Ann. (1969 Supp.), §§ 556.9, 556.12. Only the deceased child's damages are held recoverable; parents cannot even recover the value of their minor child's services. Chaloux v. International Paper Co., 75 N.H. 281, 73 A. 301.

The Iowa general statute is of the survival type. Code, 1971, § 611.20; Fitzgerald v. Hale, 247 Iowa 1194, 78 N.W.2d 509. This court has said that the recovery sought in death cases must be authorized in the statutes. Lipovac v. Iowa Ry. & Light Co., 202 Iowa 517, 519, 210 N.W. 573, 574 ("The right of recovery being wholly statutory, an action to recover for death by wrongful act must stand or fall by the terms of the statute."). The Iowa legislature, however, engrafted two death-type act provisions upon the general survival act. One provision relates only to damages recoverable by survivors of a spouse or parent and so does not reach the present case of survivors of minor children. Code, 1971, § 613.15. The other is found in present Rule 8, R.C.P.:

> A father, or if he be dead, imprisoned or has deserted the family, then the mother, may sue for *the expense and actual loss of services* resulting from injury to or death of a minor child. (Italics added.)

Rule 8 was originally a statute. It comes down to us from the Revision of 1860, where it appeared in substance as § 2792. It may have originally been founded on the rule of the common law that parents are entitled to the wages of their minor children. 39 Am.Jur. Parent & Child § 31 at 624; 67 C.J.S. Parent & Child § 29 at 730. The Report of Code Commissioners on Civil Practice in 1859 gives no clue as to the history of the provision. The section

appeared in the intervening codes down to § 10986 of the Code of 1939.

For some reason the framers of the Iowa Rules of Civil Procedure decided to take the statute into the rules. Cf. R.C.P. 97 and § 11210, Code, 1939. Therefore, in their report to the legislature in 1943, they proposed Rule 8 as a rule and the discontinuance of § 10986 as a statute. 50 G.A. ch. 278 at pages 288 and 364. The legislature did not disapprove the report, and proposed Rule 8 therefore became a rule with the force of a statute. See 49 G.A. ch. 311, § 2; Phillips v. Catterson, 235 Iowa 715, 17 N.W.2d 517.

Since plaintiffs are claiming survivors' damages, they must bring their items of damage for grief and loss of affections, etc. within Rule 8, more specifically, within the words "the expense and actual loss of services". Grief and lost affections can hardly be called "expense". Carnego v. Cresent Coal Co., 164 Iowa 552, 146 N.W. 38. Therefore the case comes down to "actual loss of services".

Webster's Third New International Dictionary ascribes the following meanings to the pertinent words. On the one hand, *service* means "the condition or occupation of a servant: the serving of a master"; "the performance of work commanded or paid for by another". On the other hand, *grief* means "emotional suffering (as caused by bereavement, affliction, remorse, panic, despair)"; *affection* means "kind feeling: tender attachment"; *society* means a "companionship or association with one's fellows: friendly or intimate intercourse"; and *companionship* means "the quality or state of being a companion" ("companion" means "one that accompanies or is in the company of another").

These definitions make evident that in speaking of "services," on the one hand, and of "grief, affection, society, and companionship," on the other, we are talking about two different concepts. We would unduly extend Rule 8 by holding that it authorizes recovery of survivors' grief or of loss of affection, society, and companionship. This court said as much by way of dictum under the statutory predecessor to Rule 8. Cerny v. Secor, 211 Iowa 1232, 1238, 234 N.W. 193, 195 (no recovery on death of minor "for loss of companionship, lacerated feelings, mental pain, or bereavement suffered by his family"). See also DeMoss v. Walker, 242 Iowa 911, 915, 48 N.W.2d 811, 814 (same regarding death of adult—"Neither the next of kin nor the representative of the estate can recover from the defendant on the basis of sentiment or solace for grief or loss of society."). Thus parents' grief and lost affections, society, and companionship are beyond the damages authorized by Rule 8.

Prosser is cited for the proposition that "the society, care and attention of the deceased are 'services' to the survivor with a financial value which may be compensated." Prosser, Torts, 930 (3d ed.). In none of the cases cited by Prosser, however, did the particular statute restrict the damages to "expenses" and "services"; all involved statutes using broader damage language. Moreover, none of those cases involved a survival act; all were death-type acts.

Two final questions. One is whether Rule 8, as presently written, is a good rule. That question presents an entirely different problem. Plaintiffs strenuously contend that parents should be able to recover for their grief and lost affections. If that is so, the way to change the law is by amending the statutes or by a proposal by this court to alter Rule 8, proceeding in the manner prescribed by § 684.19, Code, 1971. Rule 8 should not be amended by unduly extending its language. Rule 8 is a legislatively-approved rule. Alteration of it requires legislative consent; this court alone is not at liberty to amend it.

The second question relates to the proper application of the words "actual loss of services" in Rule 8 if the language of the

rule remains as it is. We should, without extending those words beyond their meaning, give them a humane interpretation in keeping with liberal application of wrongful death statutes. We should not confine the damages, under the words "actual loss of services," to wages for labor in the old common law sense. Household duties performed by girls, family tasks done by boys —in short, any conduct of children which may fairly be called services—should also be included, and evidence of all such conduct should be admissible. This has been the direction of past Iowa decisions considering the term "services". Since 1911 we have had that term in tort actions for the wrongful death of a wife and mother. 34 G.A. ch. 163, § 1; Code, 1962, § 613.11. The term has been considered by the court, which has held that recovery is not limited to work on which witnesses can place a dollar figure. Thus, the jury may make an allowance for services consisting of household duties which a deceased wife would have performed had she lived. The court said in Glanville v. Chicago, R. I. & P. R. R., 196 Iowa 456, 463, 193 N.W. 548, 551:

> The value of the services of a housewife cannot be quantitatively measured in terms of money. Such services are in a different category than compensated employment; yet no one will claim that such services are not valuable. They should be recognized in the realm of law as in the domain of economics.

We should apply this rationale to the loss of services of children.

But the rulings of the trial court are correct that "actual loss of services" does not include grief or lost affections, society, and companionship. The rulings should therefore be affirmed in their entirety.

MOORE, C. J., and STUART and Le-GRAND, JJ., join in this dissent.